CLAYTON COMMERCIAL LITIGATION LLC
E. McCord Clayton, Esq.
Two Penn Center
1500 JFK Boulevard, Suite 920
Philadelphia, PA 19102
Ph: 267-242-3943
www.claytonlit.com

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Chapter 13 |
| | : | |
| SHARONN E. THOMAS, | : | |
| | : | |
| Debtor | : | |
| | : | Bankruptcy No. 18-17430(elf) |

## BROWN'S MEMORANDUM IN OPPOSITION TO THOMAS' MOTION TO CONVERT TO CHAPTER 11

### INTRODUCTION

Martin Brown and Brown and Thomas, LLC (collectively, "Brown"), by and through their undersigned attorney, hereby submit the following *Memorandum in Opposition To Thomas' Motion to Convert to Chapter 11 (Dkt. # 66)*. Thomas has failed to meet her burden of proof as movant. Moreover, a Chapter 11 Plan is unconfirmable, and a conversion will adversely affect creditors and foster further bankruptcy abuse. Accordingly, Brown respectfully submits that the Court should deny Thomas' motion.

1

## BACKGROUND

The background relating to this bankruptcy has been presented at length in two prior motions filed by Brown herein, and so will be summarized only briefly herein.[1]

This is Thomas' second recent bankruptcy petition before this Court.  On July 6, 2017, Thomas filed a voluntary Chapter 13 Bankruptcy Petition in the U.S. Bankruptcy Court for the Eastern District of Pennsylvania under Docket No. 17-14588(elf) (the "First Bankruptcy Petition").  On December 15, 2017, following a bench hearing, the Bankruptcy Court entered an Order granting Brown's motion therein to retroactively annul the automatic stay and validate an arbitral award that had been entered in a long-pending state-court proceeding on September 11, 2017, in Brown's favor in the amount of $723,954.01.

Among other grounds described in its bench opinion, the Bankruptcy Court reasoned, then, that the arbitral award should be validated because the debtor's conduct had been inequitable insofar as she had continued to litigate the state-court action post-bankruptcy for offensive gain, but had concealed its existence from Brown for months, until attempting to invoke the bankruptcy stay defensively as a means of wiping out the adverse arbitral award.  As a result, the Bankruptcy Court annulled the stay retroactively, validated all events that had occurred in the state-court case prior to September 30, 2017, including the September 11, 2017, arbitral award, and authorized Brown to proceed prospectively with confirming the arbitral award and entering judgment thereon without any restriction from the bankruptcy stay.

On June 12, 2018, on the cusp of Thomas's plan confirmation hearing – and after Thomas had already enjoyed almost a year's worth of bankruptcy protection – the Bankruptcy

---

[1] The two prior motions were Brown's *Motion to Retroactively Annul Automatic Stay In Favor Of Validating State-Court Order* dated December 6, 2018 (Dkt. #21) and his *Motion Under § 1307(c) to Convert This Case to Chapter 7* dated December 21, 2018 (Dkt. #38) (together, "Brown's Motions to Annul/Convert").  Both motions were granted (*see* Dkts. #53 and #68).

Court granted Thomas' motion for voluntary dismissal of the First Bankruptcy Petition. Thereafter, Brown proceeded to execute on his arbitral award (which had been reduced to judgment), and Pope appealed Brown's judgment to the State Court of Appeals.

The State Court of Appeals, acting expressly "on its own motion," entered an Order dated November 8, 2018, dismissing Thomas's appeal (the "Nov. 8 Dismissal Order"). Meanwhile, Thomas had filed the instant, second bankruptcy petition on November 8, 2018, at 1:49 pm – that is, approximately two hours before the State Court of Appeals' Nov. 8 Dismissal Order was docketed and emailed. Because the second bankruptcy was filed within 180 days of Thomas' voluntary dismissal of the First Bankruptcy Petition, its filing was in violation of Section 109(g)(2). In addition, the second bankruptcy was also filed in violation of Section 109(e), insofar as Thomas' debts exceeded the available debt limits for a Chapter 13 bankruptcy.

In her reorganization Plan in the second bankruptcy, Thomas proposed to pay out only $137,000 to creditors in total, while keeping all the rest of her assets for herself – a total of $710,000 in non-exempt assets net of liabilities, according to Thomas' schedules. She further proposed to discharge her creditors, many of them (including Brown) with no payment whatever. See Dkt. #30. She had previously presented the same plan in the First Bankruptcy Petition. *See* Dkt. #20 therein. In both bankruptcies, then, what Thomas proposed was not a good-faith bankruptcy plan at all but, rather, a transparent attempt to hoard far more of her property than bankruptcy law permits while stripping her creditors of their claims.

As a result of this sequence of events, this Court granted Brown's Prior Motions to Annul/Convert. *See* Dkts. #53 and #68. In reaching those decisions, this Court held that (a) Thomas had violated Section 109(e) by filing a Chapter 13 bankruptcy despite having debts exceeding the statutory limit; (b) a reorganization Plan was inherently unconfirmable given the

liquidation and feasibility tests as applied to Thomas' schedules; and (c) Thomas' conduct was

"inequitable" in her first bankruptcy, in filing her second bankruptcy on the cusp of the Nov. 8

Dismissal Order, and also in filing her second bankruptcy in violation of Sections 109(e) and

(g)(2). *Id.*

## ARGUMENT

A. *Standard of Review.*

Relying in part on the *Pakuris* case from this very district, another Bankruptcy court has

aptly summarized some of the pertinent factors for consideration in deciding whether to convert

a bankruptcy from Chapter 7 to Chapter 11 under 11 U.S.C. § 706:

> Having concluded that the Debtors do not have an absolute right to convert these
> cases to Chapter 11 and having further concluded that the Court has the
> discretionary authority to deny their requests to convert, the question then
> becomes what factors the Court should employ in determining whether the
> Motions in these cases should be granted or denied.  The Court finds
> considerable assistance in that regard in *In re Pakuris*, 262 B.R. 330
> (Bankr.E.D.Pa.2001), and *In re Tardiff*, 145 B.R. 357 (Bankr.D.Me.1992), in
> which the bankruptcy courts enumerated a number of factors that may be
> considered in determining whether to allow conversion of a Chapter 7 case to
> Chapter 13. These factors are equally applicable to the pending Motions to
> convert the Young and PBS cases to Chapter 11, inasmuch as both Chapter 11
> and Chapter 13 are reorganization chapters. Those factors may be synthesized as
> follows:
> (1) Whether the conversion is sought in good faith;
> (2) Whether the debtor can propose a confirmable plan;
> (3) The impact on the debtor of denying conversion weighed against the
> prejudice to creditors caused by allowing conversion;
> (4) The effect of conversion on the efficient administration of the bankruptcy
> estate, including the likelihood of reconversion to Chapter 7;
> (5) Whether conversion would further abuses of the bankruptcy process and
> would serve to pervert, rather than implement, congressional policy.
> The Court believes that these enumerated factors provide a good, basic guideline
> of the factors that should be evaluated in ruling on a motion to convert, and
> therefore the Court will adopt and utilize them in this instance.

*In re Young*, 269 B.R. 816 (Bankr. W.D. Mo., 2001) (internal citations omitted).  As Thomas

herself acknowledges, "[t]he burden is on the moving part[y] [in this case, Thomas] to show that

the case should be converted."  *In re Hardigan*, 490 B.R. 437 (Bankr. S.D. Ga., 2013) (*see*

Thomas Mtn. at ¶ 6).


B.  *The Court Should Deny Thomas' Motion to Convert*

Applying the foregoing factors (and always recalling that Thomas bears the burden of

proof), Brown respectfully submits that the Court should deny Thomas' motion to convert for the

following three reasons.

1.  Thomas Has Not And Cannot Propose A Confirmable Plan

Previously, the Court granted Brown's motion to convert this case from Chapter 13 to

Chapter 7 partly because Thomas had not proposed, and could not propose, a confirmable plan.

Although Thomas now attempts to address that problem by presenting new financial statements,

the fundamental problem – a relatively high net worth, but relatively low income – still has not

changed in a manner that could possibly make any reorganization plan confirmable.

As with Chapter 13, a Chapter 11 debtor must have the wherewithal to make payments to

creditors from future income that are equivalent to what the creditors would have received in a

straight liquidation proceeding.  This Chapter 11 "Best Interests of Creditors" test thus requires

that creditors receive in a Chapter 11 proceeding no less than they would have received in a

Chapter 7 liquidation.  *See* 11 U.S.C. § 1129(a)(7).  The purpose of this liquidation test is to

make certain that creditors who are being paid less than their full claim amount are receiving at

least the amount that they would have received if the debtor's property were liquidated under

Chapter 7 bankruptcy laws, or they were able to enforce their liens against their collateral.

Relative to the liquidation test, Pope's schedules reflect total assets of $1,812,661 and liabilities of $990,529.06 – for a remaining net worth of $822,131.94.  See Dkt. #22.[2]  Even taking into account the roughly $110,000 in (unwarranted) exemptions that Thomas claims (see Dkt. #23 at pp. 32-33), that would leave some $710,000 in distributable assets.  In a Chapter 7, of course, these assets would be liquidated and distributed to creditors (including Brown) net of administrative expenses (or, alternatively, possibly left intact by the trustee so that secured creditors could later execute on their liens post-bankruptcy).[3]

The question thus becomes whether Thomas has sufficient income to make at least $710,000 worth of payments over a reasonable span of time (such as three to five years).  This is because (as in Chapter 13) in order to obtain confirmation of a Chapter 11 plan of reorganization, a plan proponent must demonstrate by a preponderance of the evidence that confirmation of the debtor's plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor (unless such liquidation or reorganization is proposed in the plan).  *See*  11 U.S.C. § 1129(a)(11).  This "feasibility" requirement is fundamentally a factual question since it necessarily depends upon a determination of the "reasonable probability of payment."  *In re Howard,* 212 B.R. 864, 878 (Bankr. E.D. Tenn. 1997) (citing *In re Foertsch,* 167 B.R. 555, 566 (Bankr. D. N.D. 1994)).

---

[2] This Court may take judicial notice of statements in the record documents and schedules filed by the debtor in this case.  *See* Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017; *see also Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1200 n. 3 (3d Cir.1991); *Levine v. Egidi*, 1993 WL 69146 (N.D.Ill.1993); *In re Paolino*, 1991 WL 284107, *12 n. 19 (Bankr.E.D.Pa.); *In re Indian Palms Associates, Ltd*., 61 F.3d 197 (3d Cir. 1995).  Moreover, factual assertions in a debtor's pleadings and schedules "are judicial admissions against the party that made them."  *Larson v. Groos Bank*, 204 B.R. 500, 502 (W.D.Tex.1996) (statements in schedules); *In re Musgrove*, 187 B.R. 808, 812 (Bankr.N.D.Ga.1995) (same); *In re Leonard*, 151 B.R. 639, 643 (Bankr.N.D.N.Y.1992) (same).

[3] The claims register herein reflects more than $1.5 million in creditor claims to date, so it seems clear that all of Thomas' non-exempt assets will be distributed to creditors and are not properly retainable by Thomas.

6

On her original schedules, Thomas had said that her total monthly income was only $2,830. See Dkt. #27. Her monthly expenses, she said, totaled $4,500, leaving her with a net monthly income of negative -$1,700. See Dkt. #22, #24. Given those figures, it was not remotely feasible to expect that Thomas would ever actually be able to make the monthly payments called for by her original Chapter 13 Plan. Lack of plan confirmability was thus, quite rightly, one of the original grounds articulated by the Court for converting this matter to Chapter 7.

Now, however, Thomas has come forward with new financial information in the form of income statements attached to her Motion to Convert. Assuming, *arguendo*, that a proper evidentiary foundation could be laid in support of these statements, they indicate that her business had annual net income for 2018 in the amount of $79,045.71, and that her aggregate personal monthly expenses totaled $6,025, leaving her (by inference) with $6,745.71 ($79,045.71 – ($6,025 x 12)) in residual disposable annual income available to fund a Chapter 11 Plan.

To begin with, it is worth noting the striking discrepancy between Thomas' latest financial statement, which shows gross receipts for 2018 in the amount of $452,041.99, and her original schedule, which had claimed gross receipts of only $11,000 for the time period from 6/10/2018 to 12/10/2018. Dkt. #27. Indeed, for November 2018 alone, her latest statement shows net income in the amount of $22,870.57 – that is, more than twice what her original schedule had listed as *gross* income for an entire *six-month period* (a period, moreover, that had actually even included November 2018 itself). These discrepancies undermine Thomas' credibility, suggest bad faith, and (like her other conduct to date) raise serious questions regarding Thomas' fitness to administer a Chapter 11 estate as debtor-in-possession.

7

But even more fundamentally, Thomas' annual income is still wholly inadequate to pay out her net worth in a reasonable amount of time. Taking her own statements at face value (for now), it would take more than 105 years ($710,000 / $6,746) for Thomas to pay out her current net worth from her future income. Obviously, that is too long. If Thomas' original plan amounted to proposing to drain the sea through a straw, then, her new one may come closer to draining it through a garden hose, but it is still patently infeasible.

Given that Thomas has not and cannot propose a confirmable Chapter 11 that simultaneously meets both the liquidation and feasibility tests – based on her very own financial statements and schedules – her motion to convert should be denied.

2.    A Conversion Will Adversely Impact Creditors And Undermine the Efficient Administration of This Bankruptcy Without Affording Any *Legitimate* Benefit Even to Thomas.

Thomas' motion should also be denied because it will adversely impact creditors and undermine the efficient administration of this bankruptcy without affording any *legitimate* benefit even to Thomas.

Chapter 11 bankruptcies are, statistically, much less successful than Chapter 7 bankruptcies. Whereas more than 95% of Chapter 7s result in a final discharge order,[4] the rate of successful Chapter 11 reorganizations has been estimated at less than 10%.[5] The expense of administering a Chapter 11 is also much higher. *Id.* Finally, Chapter 11 reorganizations are much more time-consuming – typically lasting for years, as opposed to an average of only 4-6 months for Chapter 7s.[6] Obviously, these statistics represent serious negatives from the perspective of creditors as well as the efficient administration of this bankruptcy, because they

---

[4] *See* https://www.debt.org/bankruptcy/chapter-7/
[5] *See* https://www.bankruptcyinbrief.com/chapter-11-bankruptcy-explained/
[6] *See* https://www.tbrclaw.com/how-long-does-it-take-to-process-a-bankruptcy/

suggest that a conversion will generate significant additional expense and delay and yet ultimately fail anyway.

On the other hand, Thomas (despite being movant) has not identified any benefit whatever – much less any *legitimate* benefit – that would accrue even to her (let alone her creditors) from proceeding via Chapter 11.  No doubt, Thomas would rather not have to distribute her non-exempt assets to her creditors at all – or at least to defer that day as long as possible while enjoying the automatic stay in the meantime – but such is the Faustian bargain every debtor strikes by seeking a bankruptcy discharge.  For a Chapter 11 even to warrant consideration, Thomas would have to demonstrate that a reorganization would make the pie larger for all involved, but (as explained above) her assets appear to be more valuable in liquidation than reorganization.  Nor is her prior track record on this point encouraging, given that her two prior Chapter 13 plans merely sought to make her *own* slice of the pie bigger by improperly retaining non-exempt assets for herself at the expense of her creditors.

Accordingly, her motion to convert to Chapter 11 should be denied.

### 3.   A Conversion Would Facilitate Further Bankruptcy Abuse By Thomas.

As set forth above, Thomas has a history of abusive bankruptcy practices, including concealing the existence of the First Bankruptcy Petition from Brown until after Thomas had lost in arbitration, filing the second bankruptcy petition in violation of Sections 109(e) and (g)(2), filing by way of preemptive strike just two hours before the issuance of an adverse appellate ruling, and, in both bankruptcies, proposing unconfirmable reorganization plans that retained assets for Thomas that were far in excess of her allowed bankruptcy exemptions.

Document      Page 10 of 11

For this Court to grant Thomas' motion to convert to Chapter 11, now, would merely arm Thomas to continue this pattern of abuse.  What would follow, almost certainly, is a series of self-serving, unconfirmable plans generating objections, expense and delay for creditors, while, all along, allowing Thomas to continue to operate her business and keep creditors at bay.  Such an outcome represents bankruptcy abuse and has no legitimate reorganization purpose.  Nothing in Thomas' prior practices, or her schedules, can support any other conclusion.

For this reason as well, then, the Court should deny Thomas' motion to convert to Chapter 11.

**<u>CONCLUSION</u>**

For the foregoing reasons, Brown respectfully requests that this Court deny Thomas' motion to convert this Chapter 7 case to a Chapter 11.[7]

Respectfully Submitted,

*E. McCord Clayton*

_____
E. McCord Clayton, Esq.
Clayton Commercial Litigation LLC
Two Penn Center
1500 JFK Boulevard, Suite 920
Philadelphia, PA 19102
Ph: 267-242-3943
www.claytonlit.com

Dated: February 24, 2019

---

[7] Given scheduling conflicts, it is possible that undersigned counsel may not be able to attend the scheduled hearing in this matter, in which case Brown will rely on this written submission by way of opposition.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date referenced below I served the foregoing document on Defendant's counsel, Joshua L. Thomas, Esq., and all other counsel and parties of record, via electronic court filing.


_____

E. McCord Clayton, Esq.



Dated:  February 24, 2019