United States Bankruptcy Court
Eastern District of Pennsylvania

In re:                                                                      Case No. 18-17430-elf
Sharonn E. Thomas                                                           Chapter 7
          Debtor

## CERTIFICATE OF NOTICE

District/off: 0313-2          User: JEGilmore          Page 1 of 2          Date Rcvd: Feb 13, 2020
                             Form ID: pdf900          Total Noticed: 9

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Feb 15, 2020.
db            +Sharonn E. Thomas,    856 North 29th St.,    Philadelphia, PA 19130-1144
cr            +JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,    7255 Baymeadows Way,    Jacksonville, FL 32256-6851
cr            +Martin Brown,   c/o E. McCord Clayton, Esquire,    Clayton Commercial Litigation LLC,
               Two Penn Center,    1500 JFK Blvd., Suite 920,    Philadelphia, PA 19102-1742
cr            +THE BANK OF NEW YORK MELLON,    RAS CRANE, LLC,    10700 ABBOTT'S BRIDGE ROAD, SUITE 170,
               DULUTH, GA 30097-8461
cr            +The Bank of New York Mellon et als,    RAS Crane, LLC,    10700 Abbotts Bridge Road, Suite 170,
               Duluth, GA 30097-8461

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
smg            E-mail/Text: megan.harper@phila.gov Feb 14 2020 03:44:17     City of Philadelphia,
               City of Philadelphia Law Dept.,    Tax Unit/Bankruptcy Dept,    1515 Arch Street 15th Floor,
               Philadelphia, PA  19102-1595
smg            E-mail/Text: RVSVCBICNOTICE1@state.pa.us Feb 14 2020 03:43:43
               Pennsylvania Department of Revenue,    Bankruptcy Division,    P.O. Box 280946,
               Harrisburg, PA  17128-0946
smg           +E-mail/Text: usapae.bankruptcynotices@usdoj.gov Feb 14 2020 03:44:07     U.S. Attorney Office,
               c/o Virginia Powel, Esq.,    Room 1250,    615 Chestnut Street,    Philadelphia, PA 19106-4404
cr             E-mail/Text: megan.harper@phila.gov Feb 14 2020 03:44:17     City of Philadelphia,
               Law Revenue Department,    c/o Pamela Elchert Thurmond,    1401 JFK Boulevard,
               5th Floor, Municipal Services Bldg,    Philadelphia, PA  19102
                                                                                      TOTAL: 4

             ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
intp          DHO, LLC,    1310 S. 5th Street
                                                                          TOTALS: 1, * 0, ## 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Feb 15, 2020                              Signature:   /s/Joseph Speetjens

---

## CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on February 13, 2020 at the address(es) listed below:
          DAMIEN NICHOLAS TANCREDI    on behalf of Debtor Sharonn E. Thomas
          Damien.Tancredi@flastergreenberg.com,  damien.tancredi@ecf.inforuptcy.com
          DANIELLE  BOYLE-EBERSOLE    on behalf of Creditor    U.S. Bank, National Association, as Trustee
          for the Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2005-8
          c/o Select Portfolio Servicing, Inc. debersole@hoflawgroup.com,  pfranz@hoflawgroup.com
          E. McCord CLAYTON    on behalf of Creditor Martin  Brown cord@claytonlit.com
          GARY F SEITZ    on behalf of Trustee TERRY P. DERSHAW gseitz@gsbblaw.com
          HAROLD N. KAPLAN    on behalf of Creditor   The Bank of New York Mellon et als hkaplan@rasnj.com
          HOLLY SMITH MILLER    on behalf of Trustee TERRY P. DERSHAW hsmiller@gsbblaw.com
          JEROME B. BLANK    on behalf of Creditor   HSBC Bank USA, N.A., As Indenture Trustee et al
          paeb@fedphe.com
          JEROME B. BLANK    on behalf of Creditor   Wells Fargo Bank, National Association As Trustee For
          et al paeb@fedphe.com
          JOSHUA LOUIS THOMAS    on behalf of Debtor Sharonn E. Thomas joshualthomas@gmail.com
          KARINA  VELTER    on behalf of Creditor   WILMINGTON TRUST, NATIONAL ASSOCIATION
          amps@manleydeas.com
          KEVIN G. MCDONALD    on behalf of Creditor   PNC Bank, N.A. bkgroup@kmllawgroup.com
          KEVIN M. BUTTERY    on behalf of Creditor   The Bank of New York Mellon et als
          kbuttery@rascrane.com
          KEVIN M. BUTTERY    on behalf of Creditor   DITECH FINANCIAL LLC kbuttery@rascrane.com
          KEVIN S. FRANKEL    on behalf of Creditor   JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
          pa-bk@logs.com

District/off: 0313-2          User: JEGilmore          Page 2 of 2                 Date Rcvd: Feb 13, 2020
                             Form ID: pdf900           Total Noticed: 9

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system (continued)
          KRISTEN D. LITTLE    on behalf of Creditor    JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
            pabk@logs.com
          MARIO J. HANYON    on behalf of Creditor    HSBC Bank USA, N.A., As Indenture Trustee et al
            paeb@fedphe.com
          MARIO J. HANYON    on behalf of Creditor    Wells Fargo Bank, National Association As Trustee
            paeb@fedphe.com
          MARIO J. HANYON    on behalf of Creditor    Wells Fargo Bank, National Association As Trustee For
            et al paeb@fedphe.com
          MARY F. KENNEDY    on behalf of Creditor    First Tennessee Bank National Association
            mary@javardianlaw.com, tami@javardianlaw.com
          PAMELA ELCHERT THURMOND    on behalf of Creditor    City of Philadelphia pamela.thurmond@phila.gov,
            karena.blaylock@phila.gov
          REBECCA ANN SOLARZ    on behalf of Creditor    U.S. Bank National Association, as indenture trustee,
            for the CIM Trust 2016-FRE1, Mortgage-Backed Notes, Series 2016-FRE1 bkgroup@kmllawgroup.com
          ROBERT LEITE-YOUNG    on behalf of Interested Party    DHO, LLC rleite@roachleite.com,
            lanette@roachleite.com
          TERRY P. DERSHAW    td@ix.netcom.com,  PA66@ecfcbis.com;7trustee@gmail.com
          THOMAS YOUNG.HAE SONG    on behalf of Creditor    JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
            paeb@fedphe.com
          THOMAS YOUNG.HAE SONG    on behalf of Creditor    HSBC Bank USA, N.A., As Indenture Trustee et al
            paeb@fedphe.com
          United States Trustee    USTPRegion03.PH.ECF@usdoj.gov
                                                                                        TOTAL: 26

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | **Chapter 7** |
| | : | |
| **SHARONN E. THOMAS,** | : | **Bky. No. 18-17430 ELF** |
| | : | |
| **Debtor.** | : | |
| | : | |

# O P I N I O N

## I. INTRODUCTION

Joshua Louis Thomas, Esq. ("Thomas") represented Sharon E. Thomas ("the Debtor")[1] in this and a previous bankruptcy case, filed approximately sixteen (16) months apart. Both cases have been contentious, largely due to the opposition of a major creditor, Martin Brown, acting individually and through his entity, Brown and Thomas, LLC ("B&T") ("Brown" when referred to collectively).

B&T is a real estate brokerage firm in which the Debtor formerly was a shareholder. Martin Brown owned 51% of the company and the Debtor owned 49%. The Debtor withdrew from B&T on April 22, 2016, which resulted in state court litigation against her that Brown has pursued vigorously.

Currently, the Debtor owns and operates her own real estate company that acts as a sales broker and manages properties, primarily in New Jersey. In addition, the Debtor, acting individually, buys, sells, and rents properties, primarily in Philadelphia.

In the Debtor's first bankruptcy, twenty-two (22) creditors, most of which hold mortgages against the Debtor's Philadelphia properties, filed proofs of claim. Despite this, the schedules filed

---

[1]    Thomas and the Debtor are not related.

by Thomas in the Debtor's current bankruptcy case fail to account for or report the existence

of numerous secured claims filed in her first bankruptcy case.  Instead, the schedules in the

Debtor's two (2) bankruptcy cases, both filed with this court by Thomas (the Debtor's

counsel) are nearly identical.

Because of the obvious omissions and inaccuracies in the Debtor's schedules in the

present case, I issued a sua sponte Order to Show Cause for Thomas to appear and

demonstrate why he should not be sanctioned pursuant to Federal Rule of Bankruptcy

Procedure 9011(b)(3). A hearing on the matter was held and concluded on March 12, 2019.

For the reasons discussed in this Opinion, I find that Thomas violated Rule 9011 in

failing to make a reasonable inquiry into the facts averred in the Debtor's bankruptcy

schedules that he submitted to this court with the Debtor's second bankruptcy filing.[2]

Based on this violation of Rule 9011, I will sanction Thomas in three (3) ways.

First, Thomas, who has not received payment in the present bankruptcy case, will be

barred from filing a claim for an administrative expense for his services (i.e., he will not

receive payment for his work in this matter).

Second, Thomas will be ordered to pay $1,000.00 to the chapter 7 Trustee for the

benefit of the Debtor's estate.

Third, this matter will be referred to the Acting U.S. Trustee in order to determine

---

[2]  The court also has inherent power to sanction pursuant to 11 U.S.C. § 105. See Fellheimer, Eichen & Braverman, P.C. v. Charter Tech., Inc., 57 F. 3d 1215, 1224 (3d Cir. 1995). However, as a general principle, the preferred method of sanctioning is by rule or statute and a court should refrain from exercising its inherent power unless the party's conduct is egregious and there is no other basis for sanctions.  See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 278 F.3d 175, 189 (3d Cir. 2002); Martin v. Brown, 63 F.3d 1252, 1265 (3d Cir. 1995); accord Chambers v. NASCO, Inc., 501 U.S. 32, 50 (1991).

whether a further disciplinary proceeding should be initiated against Thomas in the U.S.

District Court.

## II.  FACTUAL FINDINGS

### A. The Debtor's First Bankruptcy Case

1.    The Debtor filed her first chapter 13 bankruptcy case in this court on July 6, 2017

   (Bky.- No. 17-14588) ("the First Case").[3]

2.    Thomas represented the Debtor in her First Case.

3.    The Debtor lives in New Jersey and operates a real estate brokerage and property

   management business there called Vanguard Realty Group, Inc. ("Vanguard Realty").

4.    The Debtor owns approximately twenty (20) investment properties in the City of

   Philadelphia ("the Philadelphia Properties").

5.    Some, but not all, of the Philadelphia Properties are encumbered by mortgage debt and

   municipal liens.

6.    The First Case was precipitated by receipt of a money judgment against the Debtor in

   favor of  Dalin Financial ("Dalin").  The judgment concerned a property for which the

   Debtor co-signed a loan.  (Hearing Transcript, April 15, 2019, at 40-42) (Bky. No. 18-

   17430,  Doc. # 134) (hereafter, "Tr.").[4]

7.    The First Case was filed in order to stay the enforcement of Dalin's judgment against

---

   [3]  The Debtor's name was listed as "Sharon E. Thomas-Pope" in the First Case.


   [4]  Hereafter, in this Opinion, unless otherwise noted, references to the record are to the
present bankruptcy case.  References to the record in the First Case will include the term "Bky.
No. 17-14588."

the Debtor.  (Tr. at 19, 42).

8.    Thomas was aware that Dalin was a creditor of the Debtor.  (Tr. at 41-42).

9.    Thomas and the Debtor reviewed the Debtor's properties and schedules prior to filing

the First Case.  (Tr. at 16-17).

10.   On August 10, 2017, in the First Case, Thomas filed the Debtor's Schedules A/B, C, D,

E/F, G, H, I, J, the Schedule of Financial Affairs ("SOFA"), Disclosure of

Compensation of Attorney for Debtor, and Official Form 122C-1.[5]

11.   The Debtor's schedules did not list Dalin as a creditor in the First Case.

12.   Vanguard Realty generated gross receipts of approximately $100,000.00 from January

to mid-April of 2019, resulting in net income of about $30,000.00.  (Tr. at 20-21).

13.   The Debtor pays herself wages from Vanguard Realty.  Id.  Her income fluctuates

month to month and year to year.  (Tr. at 21, 29-30).

14.   The Debtor's reported monthly income of $2,830.47 on Schedule I in the First Case was

based solely on her income derived from Vanguard Realty.  (Tr. at 18, 65).

15.   Schedule I in the First Case did not disclose income derived from the rents of the

Philadelphia Properties, even though she discussed this income with Thomas.  (Tr. at

18, 36).  Nor did this Schedule I disclose her husband's income, even though her

husband was either employed or receiving unemployment insurance.[6]  (Tr. at 18, 19,

36).

---

[5]  Thomas filed amended Schedule J on August 16, 2017; amended Schedule A/B and an
amended Disclosure of Compensation Form on November 13, 2017; and amended SOFA on
November 28, 2017.

[6]  The Debtor did not recall if she discussed her husband's unemployment income with
Thomas when they prepared her schedules in the First Case. (Tr. at 36).

-4-

16.   As summarized in the chart below, a total of twenty-two (22) claims were filed by

creditors in the First Case:

| Claim No. | Date Filed | Creditor | Basis for Claim | Amount of Claim | Secured |
|---|---|---|---|---|---|
| 1 | 8/18/17 | Wilmington Trust, National Assoc.[7] | Mortgage on 2045 W. Oxford St. Philadelphia | $96,225.17 | Yes |
| 2 | 8/29/17 | Dalin Funding, L.P. | Judgment lien entered in state court on 5/18/15 (plus 6% interest) | $111,638.78 | Yes |
| 3 | 8/29/17 | First Tennessee Bank, N.A. | Mortgage on 49 Graypebble Cir. Sicklerville, NJ | $87,152.35 | Yes |
| 4 | 8/31/17 | Bank of New York Mellon, serviced by Nationstar Mortgage LLC | Mortgage on 504 N. 57th St. Philadelphia | $15,923.33 | Yes |
| 5 | 9/1/17 | Bank of New York Mellon, serviced by Nationstar Mortgage LLC | Mortgage on 6106 Oxford St. Philadelphia | $17,828.28 | Yes |
| 6 | 9/6/17, amended 10/23/17 | PA Dept. of Revenue | Personal income taxes | $1,391.02[8] | No (Priority claim) |

---

[7]  Claim No. 1 was transferred to Wells Fargo Bank, N.A. on March 21, 2018.

[8]  This is the amended amount; the original amount of the Proof of Claim was $5,961.76.

-5-

| Claim No. | Date Filed | Creditor | Basis for Claim | Amount of Claim | Secured |
|---|---|---|---|---|---|
| 7 | 9/29/17 | Ditech Financial LLC | Mortgage on 49 Graypebble Cir. Sicklerville NJ (residence) | $52,991.43 | Yes |
| 8 | 10/26/17 | JPMorgan Chase Bank, N.A. | Mortgage on 2338 North Gratz St. Philadelphia | $31,095.20 | Yes |
| 9 | 10/30/17 | Portfolio Recovery Assoc., LLC (from Citibank) | Credit card debt | $5,761.51 | No |
| 10 | 10/31/17 | Bank of New York Mellon | Mortgage on 4712 Penn St. Philadelphia | $25,629.32 | Yes |
| 11 | 11/1/17, amended 1/31/18 | Martin Brown, LLC (B&T) | September 2017 arbitration award, entered as judgment in the Superior Court of New Jersey on January 19, 2018 | $723,954.01 | Partially secured by Debtor's residence at 49 Graypebble Cir. Sicklerville, NJ |
| 12 | 11/7/17 | JP Morgan Chase Bank, N.A. | Mortgage on 2607 N.24th St. Philadelphia | $35,573.96 | Yes |
| 13 | 11/10/17 | PNC Bank, N.A. | Mortgage on 2817 N. Taney St. Philadelphia | $4,082.47 | Yes |
| 14 | 11/27/17 | JP Morgan Chase Bank | Mortgage on 5710 Hadfield St. Philadelphia | $39,848.71 | Yes |

-6-

| Claim No. | Date Filed | Creditor | Basis for Claim | Amount of Claim | Secured |
|---|---|---|---|---|---|
| 15 | 12/4/17 | Cavalry SPV I, LLC, assignee of Citibank | Credit card debt | $3,009.50 | No |
| 16 | 12/6/17 | Wells Fargo Bank, N.A./ Ocwen Loan Servicing, LLC | Mortgage on 5403 N. 12th St. Philadelphia | $96,937.96 | Yes |
| 17 | 12/12/17 | U.S. Bank, N.A. | Mortgage on 2832 N. Bambrey St. Philadelphia | $32,535.42 | Yes |
| 18 | 12/12/17, amended 2/13/18 | U.S. Bank, N.A. | Mortgage on 5621 Walton Ave. Philadelphia | $37,338.70 | Yes |
| 19 | 12/12/17 | HSBC Bank U.S.A., N.A. | Mortgage on 6563 Woodstock St. Philadelphia | $59,850.15 | Yes |
| 20 | 1/2/18, amended 3/14/18 | City of Philadelphia Law Dept. | Real estate taxes, refuse collection fees, judgments, business income receipts | $75,435.52 | Partially |
| 21 | 3/2/18 | City of Philadelphia, Water Revenue Bureau | Secured by eighteen (18) properties | $121,421.48 | Yes |
| 22 | 3/2/18 | City of Philadelphia, Law Dept. | Water/sewer repairs of various properties | $1,784.15 | Yes |

17.  On December 15, 2017, following a hearing and over the Debtor's objection, this court

entered an order in the First Case granting both prospective and retrospective relief from the

automatic stay to Brown ("the Stay Relief Order").  (See Bky. No. 17-14588, Doc. #'s 51, 65

73).

18.   The Stay Relief Order resulted from the following:

    a.   Brown sued the Debtor in the Superior Court of New Jersey on June 20, 2016, alleging breach of contract, tortuous interference, defamation, and unfair competition in connection with the Debtor's departure as a shareholder of B&T (Brown v. Pope, No. A-003453-17T3) ("the State Court Action").  (See Bky. No. 17-14588, Doc. # 51, Ex.1).

    b.   The State Court Action was sent to arbitration.

    c.   Despite the ongoing State Court Action, the Debtor failed to list Brown as a creditor in the First Case.  Thomas not only failed to provide any notice of the Debtor's bankruptcy filing to Brown, but also continued to conduct discovery in the State Court Action.

    d.   Thomas only advised Brown of the existence of the bankruptcy filing immediately prior to the scheduled arbitration hearing.

    e.   Despite receiving the belated notice of the bankruptcy case, Brown proceeded in the arbitration.

    f.   On September 11, 2017, an arbitration award was entered in the State Court Action against the Debtor and in favor of Brown in the amount of $723,954.01 ("the Arbitration Award").  (See Bky. No. 17-14588, Doc. # 51, Ex. 4).

19.   The Stay Relief Order annulled the automatic stay in part, validated the entry of the

Arbitration Award and permitted Brown to assert and pursue his claims in the State

Court Action in order to confirm the Arbitration Award as a court judgment, provided

that he did not execute upon or seek to enforce any money judgment entered in the State

Court Action.

20.   In entering the Stay Relief Order and annulling the automatic stay in part, this court

found that Thomas' conduct in concealing the existence of the bankruptcy until just

prior to the scheduled arbitration hearing to be "completely inexcusable" and "almost

shocking." (Hearing Transcript, December 15, 2017, at 114, 127) (Bky. No. 17-14588,

Doc. # 76).

21. On June 12, 2012, the court granted the Debtor's Motion to Voluntarily Dismiss  Case

pursuant to 11 U.S. Code § 1307(b).

22. The First Case was dismissed one day before the scheduled confirmation hearing and

following the Debtor's failure to file an amended plan, as directed, by May 15, 2018.

(See Bky. No. 17-14588, Doc. # 103).


### B. The Debtor's Present Bankruptcy Case

23. The Debtor filed her second chapter 13 bankruptcy case on November 8, 2018 (Bky.

No. 18-17430) ("the Present Case").

24. Thomas initially represented the Debtor in the Present Case, but has since withdrawn as

Debtor's counsel.  The Debtor is currently represented by new counsel.

25. The Debtor filed her Present Case in order to stay Brown's collection of the judgment

entered in New Jersey confirming the Arbitration Award.  (See Tr. at 14, 28, 37-38;

Exs. D-1; D-3).

26. After transferring the New Jersey judgment to Pennsylvania,[9] Brown levied upon the

Debtor's bank account and Philadelphia tenant rents in an attempt to enforce the

Arbitration Award.  (Tr. at 42).  The Debtor filed the Present Case to protect those

---

[9] Brown sought to proceed in the Philadelphia court by way of the Foreign Judgment
Act, 42 Pa. C.S. § 4306.

assets. (Tr. at 14, 37-38, 54, 58, 75).

27. On December 10, 2018, thirty-two (32) days after the Debtor filed the Present Case, the

Debtor filed Schedules A/B, C, D, E/F, G, H, I and J, the Disclosure of Compensation

of Attorney for Debtor, the SOFA and Form 122C-1.[10]

28. On January 22, 2019, upon Brown's Motion to Convert or Dismiss and over the

Debtor's opposition, the court converted the Present Case from chapter 13 to chapter 7.

29. On February 11, 2019, on Brown's Motion, this court entered an order annulling the

automatic stay for the second time in a bankruptcy case filed by the Debtor.[11]

30. This order annulling the automatic stay validated a November 18, 2018 New Jersey

state appellate court order, which had dismissed the Debtor's appeal of the confirmed

Arbitration Award ("the Second Annulment Order") (Doc. # 68).[12]

---

[10] Upon the Debtor's Motion to extend the time to file her schedules (Doc. # 13), the court extended the deadline to December 7, 2018.  (Doc. # 19).  The Debtor filed her schedules after this deadline.

[11] The December 15, 2017 Stay Relief Order annulled the stay (in part) the first time.

[12] The November 8, 2018 state appellate court order dismissed the Debtor's appeal of the Arbitration Award because she "failed to correct the noted deficiencies" in her brief and appendix "within the time period provided."  (Doc. # 21, Ex. E).  The Debtor filed the Present (bankruptcy) Case two (2) hours before the state appellate court dismissed her appeal, which had been pending for seven (7) months.

The "most influential factor" in my granting the Second Annulment Order was the Debtor's inequitable conduct both in failing to comply with the State Court's scheduling order and her fundamentally flawed filing of the Present Case.

The dismissal of the Debtor's appeal for failure to timely comply with the New Jersey appellate court's scheduling orders appears to be a continuation of the inequitable conduct that caused me to grant retroactive relief from the automatic stay to Brown in the Debtor's prior chapter 13 case, Bky. No. 17-14588.

(continued...)

-10-

31. On March 12, 2019, following a hearing and briefing from Brown and the Debtor, and

by way of an oral bench opinion, this court denied the Debtor's Motion to Convert her

case from chapter 7 to chapter 11.  (See Doc. #'s 81-83).

32. The denial of the Debtor's Motion to Convert was based, in large part, on the Debtor's

misuse of the bankruptcy process.[13]

33. On March 12, 2019, the court also entered an Order, sua sponte, for Thomas to Show

Cause why he should not be sanctioned for violating Fed. R. Bankr. P. 9011(b)(3) (the

"Show Cause Order").[14]  (See Doc. # 84).

34. The Show Cause Order specified that "it appears probable that, in submitting the

Debtor's schedules to the court in the Present Case, Mr. Thomas violated Fed. R.

---

[12](...continued)
>Further, the timing of the Debtor's filing of the current bankruptcy case also
appears tactical, coming, as it did, when the Debtor was out of compliance with
the appellate court's scheduling orders and vulnerable to dismissal.  But even
more significant were the questionable choices the Debtor [made] in filing this
case, the Debtor being ineligible to be a chapter 13 debtor, see 11 U.S.C. §109(e)
and likely ineligible to be a voluntary debtor at all, see 11 U.S.C. §109(g)(2).

(Second Annulment Order at 2, n.1) (Doc. # 68).

[13]  In denying the Motion to Convert, I also found that the Debtor's "entirely unreliable
report[ing]" regarding her financial condition and property indicates bad faith.  (Audio File at
18:47) (Doc. # 81).  Although I may not have stated so expressly, I attributed the Debtor's misuse
of the bankruptcy system to her reliance on the advice provided by Thomas.

The Motion was also denied due to my concerns that a chapter 11 plan was not likely
to succeed under the factual circumstances presented here.  See 11 U.S.C. §1112(b)(4).

[14]  Rule 9011(c)(1)(B) provides that "[o]n its own initiative, the court may enter an order
describing the specific conduct that appears to violate subdivision (b) and directing an attorney,
law firm, or party to show cause why it has not violated subdivision (b) with respect thereto."
See Martin v. Brown, 63 F.3d 1252, 1264 (3d Cir. 1995).

-11-

Bankr. P. 9011(b)(3)." (Show Cause Order ¶ 2).

35. On March 18, 2019, the Debtor appealed the order denying the Motion to Convert.

36. The appeal of the order denying the Motion to Convert was dismissed by the District

Court on April 22, 2019 due to the Debtor's failure to comply with the rules of court.

(Doc. # 121).

37. On March 19, 2019, due to Thomas' failure to comply with the rules of this court

governing motion practice, the court denied the Debtor's Motion for Relief from the

Automatic Stay, in which the Debtor sought leave to request that the state court

reinstate her appeal. (See Doc. #'s 92, 96).[15]

38. On May 10, 2019, upon motion of the chapter 7 Trustee, the court entered an Order

compelling the Debtor to amend her schedules and provide accurate information to the

Trustee (the "Order to Compel"). (Doc. # 129).

39. On May 31, 2019, pursuant to the Order to Compel, the Debtor's new counsel filed

amended schedules in the Present Case. (Doc. # 144).


### C. Thomas and the Debtor's Communication Regarding the Present Case

40. The Debtor and Thomas did not meet in person prior to the Present Case being filed.

(Tr. at 34, 45). They communicated by email and phone. (Tr. at 43, 45, 51).

---

[15] It was necessary for the Debtor to obtain relief from the automatic stay in order to
seek reinstatement of her appeal because the automatic stay applies to all appeals of proceedings
that were originally brought against the debtor, regardless whether the debtor is the appellant or
appellee. See Assoc. of St. Croix Condo. Owners v. St. Croix Hotel Corp., 682 F.2d 446, 449
(3d Cir. 1982).

-12-

41. The Debtor did not see or review her bankruptcy schedules with Thomas in the Present Case before Thomas filed the schedules. (Tr. at 31, 47-48).[16]

### D. Comparison of Schedules and Plans in the First Case and the Present Case[17]

#### 1. Schedules A/B (Property Owned)

42. On her original Schedule A/B (the "2017 A/B"), filed on August 10, 2017 in the First Case, the Debtor listed a total of nineteen (19) real properties which she owned or in which she had an interest. The total value of the Debtor's interest in the real properties was reported as $1,704,808.00.

43. Approximately three (3) months later, on November 13, 2017, the Debtor amended her 2017 Schedule A/B (the "Amended 2017 A/B") in the First Case to include the following six (6) properties (the "Six Properties"):[18]

---

[16] Thomas testified that he and the Debtor discussed (although not in person) the Debtor's 2018 schedules prior to the filing of the Present Case. (Tr. at 87-88; see also Thomas' Brief at 3 (noting that most of meetings came after filing)). The Debtor acknowledged providing Thomas with information about her income and expenses. (Tr. at 31, 34-35, 47-48). But she contradicted Thomas, testifying that she "did not see the 2018 schedules" or review them in the "32-day period between the filing of the bankruptcy and the filing of [the 2018 schedules]." (Tr. at 34, 48).

I credit the Debtor's testimony on this point for two (2) reasons. First, Thomas does not assert that he and the Debtor had an in-person meeting during which the Debtor reviewed the schedules in the Present Case. Second, based on my observations during their testimony, I find the Debtor to be the more credible witness.

[17] The schedules and amendments from both cases were admitted into the record at the Show Cause Hearing. (Tr. at 55-56).

[18] Four (4) of these properties were listed on a separate, attached sheet.

-13-

    a.   5403 N. 12th St., Philadelphia (interest listed as $136,431.00)

    b.   3060 Bonsall St., Philadelphia (interest listed as $20,238.00)

    c.   5726 Hoffman Ave. (interest listed as $52,898.00)

    d.   5728 Hoffman Ave. (interest listed as $53,001.00)[19]

    e.   3330 W. Sergeant St. (interest listed as $26,481.00)

    f.   6563 Woodstock St. (interest listed as $72,601.00)

44.   The Amended 2017 A/B lists the total value of the Debtor's interest in all real

properties as $1,704,808.00 (i.e., the same amount listed in the 2017 A/B, despite the

existence of the additional Six Properties).

45.   The Debtor did not transfer or sell any of the Six Properties prior to the filing of the

Present Case.  (Tr. at 33-34).

46.   On December 10, 2018, nearly one (1) year after Thomas filed the Amended 2017 A/B

for the Debtor in her First Case, he filed Schedule A/B in the Present Case (the "Present

A/B"), listing the same nineteen (19) properties that were listed on the 2017 A/B and

omitting the Six Properties that were added in the Amended 2017 A/B.  (See Doc. #

23).

47.   The Present A/B again listed the total value of the Debtor's interest in all real properties

as $1,704,808.00.

48.   Although 6563 Woodstock St. is not included in the Debtor's Present A/B, the Debtor

---

[19] On the Amended A/B, the Debtor listed property located at 5726 Hoffman Ave. twice; this is a typo. The Debtor owns properties at 5726 and 5728 Hoffman Ave.  (See Doc. # 144; Tr. at 33-34).

disclosed a pending loan modification with regard to this property in the chapter 13 plan proposed in the Present Case.  (See Doc. # 30, at ¶ 7(d)).[20]

49.   Each of the Debtor's three (3) Schedules A/B (the Original A/B, the Amended A/B, and the Present A/B) lists the total value of the Debtor's personal and household belongings (including jewelry, clothing, and miscellaneous items) as $5,600.00.

50.   Each of the Debtor's three (3) Schedules A/B reports the Debtor as having the precise same interest in financial assets: $120.00 in cash, $1,100.00 in bank deposits, and $700.00 in stocks.

51.   Each of the Debtor's three (3) Schedules A/B report the total of all property to be $1,812,661.00.[21]

## 2. Schedule D (Secured Creditors)

52.   The Debtor's Schedule D (listing secured creditors), filed in the Present Case on December 10, 2018, is identical to the Schedule D that the Debtor filed in the First Case on August 10, 2017.

53.   As detailed in the chart below, the Schedule D in the Present Case fails to acknowledge or account for some of the secured proofs of claim filed in the First Case:

---

[20]   The same six (6) properties with pending loan modifications were also listed in Part 9 of the Second Amended Plan in the First Case.  (See Doc. # 101).

[21]   Following the Show Cause Hearing, on May 31, 2019, the Debtor, through her new counsel, amended her schedules in the Present Case, adding the Six Properties and making certain other changes (including stating that her sum value of her property is $2,431,723.00).  (See Doc # 144, Schedule A/B, Part 8).

-15-

| **Proof of Claim in the First Case** | **Secured creditor** | **Amount of Claim** | **Address of Property Securing Claim or Basis of Claim** | **Inconsistency between the Claim in the First Case and Information Provided in Schedule D in the Present Case** |
|---|---|---|---|---|
| 1 | Wilmington Trust Nat'l Assoc. (transferred to Wells Fargo Bank, N.A.) | $96,225.17 | 2045 W. Oxford St.[22] | Secured claim reported in a different amount in the Present Case ($96,090.00 vs. $96,225.17) |
| 2 | Dalin Funding, L.P. | $111,638.78 | Judgment lien | Secured creditor not listed in the Present Case |
| 3 | First Tennessee Bank, N.A. | $87,152.35 | 49 Graypebble Cir. Sicklerville, NJ | Secured creditor not listed in the Present Case |
| 4 | Bank of New York Mellon, serviced by Nationstar Mortgage LLC | $15,923.33 | 504 N. 57th St. | Secured claim reported in a different amount in the Present Case ($18,930.00 vs. $15,923.33) |
| 5 | Bank of New York Mellon, serviced by Nationstar Mortgage, LLC | $17,828.28 | 6106 Oxford St. | Claim reported in a different amount in the Present Case ($16,273.00 vs. $17,828.28), and address of property not listed |

---

[22] All properties are in Philadelphia unless otherwise noted.

| Proof of Claim in the First Case | Secured creditor | Amount of Claim | Address of Property Securing Claim or Basis of Claim | Inconsistency between the Claim in the First Case and Information Provided in Schedule D in the Present Case |
|---|---|---|---|---|
| 7 | Ditech Financial, LLC | $52,991.43 | 49 Graypebble Cir. Sicklerville, NJ | Claim reported in a different amount in the Present Case ($54,066.00 vs. $52,991.43) |
| 8 | JP Morgan Chase Bank, N.A. | $31,095.20 | 2338 North Gratz St. | Claim reported in a different amount in the Present Case ($38,420.00 vs. $31,095.20) |
| 10 | Bank of New York Mellon | $25,629.32 | 4712 Penn St. | Secured creditor not listed in the Present Case |
| 12 | JP Morgan Chase Bank, N.A. | $35,573.96 | 2607 N. 24th St. | Claim reported in a different amount in the Present Case ($31,493.00 vs. $35,573.96) |
| 13 | PNC Bank. N.A. | $4,082.47 | 2817 N. Taney St. | Secured claim reported in a different amount in the Present Case ($13,733.00 vs. $4,082.47), and address of property not listed |
| 14 | JP Morgan Chase Bank, N.A. | $39,848.71 | 5710 Hadfield St. | Secured claim reported in a different amount in the Present Case ($34,617.00 vs. $39,848.71) |

| Proof of Claim in the First Case | Secured creditor | Amount of Claim | Address of Property Securing Claim or Basis of Claim | Inconsistency between the Claim in the First Case and Information Provided in Schedule D in the Present Case |
|---|---|---|---|---|
| 16 | Wells Fargo Bank, N.A. | $96,937.96 | 5403 N. 12th St. | Secured claim reported in a different amount in the Present Case ($91,956.00 vs. $96,937.96) |
| 17 | U.S. Bank, N.A. | $32,535.42 | 2832 N. Bambrey St. | Secured claim reported in a different amount in the Present Case ($37,350.00 vs. $32,535.42) |
| 18 | U.S. Bank, N.A. | $37,338.70 | 5621 Walton Ave. | Secured creditor not listed in the Present Case |
| 19 | HSBC Bank U.S.A., N.A. | $59,850.15 | 6563 Woodstock St. | Secured claim reported in a different amount in the Present Case ($53,206.00 vs. $59,850.15) |
| 20 | City of Philadelphia Law Dept. | $75,435.52 | Real estate taxes, refuse collection fees, judgments, business income receipts | Secured creditor not listed in the Present Case |
| 21 | City of Philadelphia Water Revenue Bureau | $121,421.48 (total on all properties) | Secured by eighteen (18) properties; the Proof of Claim breaks down the claim by how much is secured by each property | Different amount of claim reported in the Present Case with regard to sixteen (16) properties; secured debt on two (2) properties not reported in the Present Case |

-18-

| Proof of Claim in the First Case | Secured creditor | Amount of Claim | Address of Property Securing Claim or Basis of Claim | Inconsistency between the Claim in the First Case and Information Provided in Schedule D in the Present Case |
|---|---|---|---|---|
| 22 | City of Philadelphia Law Dept. | $1,784.15 | Water/sewer repairs of various properties | Secured debt not listed in the Present Case |

### 3. Schedules E/F and G (Unsecured Creditors and Leaseholders)

54. Schedule E/F in the Present Case is identical to the Schedule E/F filed in the First Case, and lists a total of $127,628.77 in taxes and other government debt and $2,446.00 owed in student loans.

55. The same ten (10) creditors are reported on Schedules E/F in the First Case and the Present Case.

56. The Debtor's Schedule E/F in the Present Case does not list the Pennsylvania Department of Revenue as a creditor, despite the fact that it filed a claim for $1,391.02 in the First Case (Claim No. 6).

57. The Debtor's Schedule E/F in the Present Case does not list Portfolio Recovery Associates, LLC as a creditor, despite the fact that it filed an unsecured claim for $5,761.51 in the First Case (Claim No. 9).

58. The Debtor's Schedule E/F in the Present Case does not list the Cavalry SPV I, LLC as a creditor, despite the fact that it filed an unsecured claim for $3,009.50 in the First Case (Claim No. 15).

59. As in the First Case, Thomas filed Schedule G in the Present Case reporting that the

-19-

Debtor has no pending contracts or unexpired leases, despite the fact that the Debtor is

in the business of renting residential property.[23]

### 4. Schedules I and J (Income and Expenses)

60. The Debtor reported monthly income of $2,830.47 on her Schedule I in the First Case.

This income was earned from the Debtor's real estate business in New Jersey. (See

Bky. No. 17-14588, Doc. # 18; Tr. at 18, 35).

61. The Debtor's reported income did not include rental income earned in Philadelphia or

income of the Debtor's spouse. (Tr. at 18, 77-78).

62. The Debtor's business was turning a higher profit at the time the Present Case was

filed. (Tr. at 20).

63. Nevertheless, the Debtor reported the exact same income on Schedule I in the Present

Case that she did in the First Case ($2,830.47).[24]

64. Schedule I in both the First Case and the Present Case states that the Debtor has been

employed by Vanguard Realiy [sic] Group for one (1) year, despite the fact that the

schedules were filed sixteen (16) months apart.

65. An identical typographical error ("Realiy" instead of "Realty") exists on both Schedules

---

[23] In amending her Schedule G in the Present Case, the Debtor's new counsel reported twenty (20) executory contracts and unexpired leases. (See Doc # 144).

[24] The Debtor's new counsel filed an Amended Schedule I, showing the Debtor's income (from the same employment) jumping from $2,830.47 on December 10, 2018 to $14,700.00 less than six (6) months later. (Compare Doc. # 23, with Doc. # 144). Similarly, the Debtor's expenses jumped in this time period from $4,531.33 to $15,724.00. (Compare Doc. # 24, with Doc. # 144).

-20-

I filed by Thomas.

66. Schedule J in both the First Case and in the Present Case reports monthly expenses of

$4,531.33, even though the Debtor's expenses changed between the filing of the First

and Present Cases.  (See Tr. at 35).

67. The Debtor's dependent daughter appears only in the Schedule J of the First Case; no

dependents are listed on Schedule J in the Present Case.

68. However, the Debtor had a dependent living with her when the Present Case was filed.

(Tr. at 35).


**5.  Proposed Plans**

69. The Debtor's proposed plan in the Present Case (filed prior to the case being converted

from chapter 13 to chapter 7) offers the same provisions as the plan proposed in the

First Case; namely, a base amount of $137,421.60 paid in equal installments over sixty

(60) months.  (See Doc. # 30; Bky. No. 17-14588, Doc. # 101).


**6. Compensation of Attorney**

70. Thomas' Disclosure of Compensation in the First Case states that he is receiving $0.00

for his services, (Bky. No. 17-14588, Doc. # 18), while the original plan estimated

attorney's fees at $2,100.00 (Plan §4.3) (Bky. No. 17-14588, Doc. # 20).

71. Thomas' Amended Disclosure of Compensation in the First Case stated that he agreed

to accept $3,500.00 for legal services.  (Bky. No. 17-14588, Doc. # 59).

72. The Debtor paid Thomas $1,200.00 or $1,500.00 before he filed the First Case on the

Debtor's behalf.  (Tr. at 47, 50).

73. Thomas again reported compensation of $0.00 in the Present Case.  (Doc. # 28).[25]

74. The Debtor testified that Thomas did not charge her for his work in the Present Case.

(Tr. at 47, 81).


### III.  DISCUSSION

### A. Federal Rule of Bankruptcy Procedure 9011

Federal Rule of Bankruptcy Procedure 9011, like its counterpart in the civil rules,

Federal Rule of Civil Procedure 11, is designed to deter abusive practices and otherwise

streamline litigation.  E.g., In re Schaefer Salt Recovery, Inc., 542 F.3d 90, 97 (3d Cir.

2008).  To effect deterrence, a court may impose appropriate sanctions for Rule 9011

violations.  See Fed. R. Bankr. P. 9011(c).

Of particular relevance here is Rule 9011(b)(3), which provides:

> (b) **Representations to the Court**. By presenting to the court (whether by
> signing, *filing, submitting*, or later advocating) a petition, pleading,
> written motion, or other paper, an attorney or unrepresented party is
> certifying that to the best of the person's knowledge, information, and
> belief, *formed after an inquiry reasonable under the circumstances*,
>
> [...]
>
> (3) the allegations and other *factual contentions have evidentiary
> support* or, if specifically so identified, are likely to have
> evidentiary support after a reasonable opportunity for further
> investigation or discovery . . .

Fed. R. Bankr. P. 9011(b)(3) (emphasis added).

---

[25] For some reason, the docket entry states the compensation as $3,600.00; the actual
document states that the amount is $0.00.

In essence, Rule 9011(b)(3) imposes a duty on attorneys to ensure, upon reasonable investigation, that the factual contentions they submit to the court have (or are likely to have) evidentiary support.  As the Third Circuit has explained, "[t]he concern of Rule 9011 is not the truth or falsity of the representation in itself, but rather whether the party making the representation reasonably believed it at the time to have evidentiary support."[26]  In re Taylor, 655 F.3d 274, 282 (3d Cir. 2011).

Rule 9011(b)(3) thus requires an attorney representing a debtor to make "at least some affirmative investigation into the facts represented in documents submitted to the court."  In re Parikh, 508 B.R. 572, 585, 590-594 (Bankr. E.D.N.Y. 2014) (citation omitted).  In particular, attorneys have an independent and affirmative duty to ensure that a debtor's bankruptcy schedules are current and accurate.  In re Beinhauer, 570 B.R. 128, 142-3 (Bankr. E.D.N.Y. 2017) (quoting 4 Collier on Bankruptcy, ¶ 521.03[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("Collier")) ("In the preparation of the schedules nothing should be taken for granted."); see also In re Redante, 579 B.R. 354, 365 (Bankr. E.D. Pa. 2018) (noting that it is expected that "debtors will rely upon their attorneys for help in drafting their schedules and assigning values to assets") (citation omitted); Parikh, 508 B.R. at 579 (Bankr. E.D.N.Y. 2014) (discussing the importance of accurate information in a debtor's schedules).

The attorney's investigation into the factual averments he submits to the court must

---

[26]  In determining whether a party violated Rule 9011, a court need not make a finding of bad faith; the relevant inquiry is whether the conduct was objectively unreasonable.  In re Taylor, 655 F.3d 274, 282 (3d Cir. 2011) (citing Fellheimer, Eichen & Braverman, P.C. v. Charter Tech., Inc., 57 F.3d 1215, 1225 (3d Cir. 1995)).

-23-

be reasonable under the circumstances.  In re Schmelia, 607 B.R. 455, 459 (Bankr. D.N.J. 2019).  A reasonable investigation need not be designed to result in the certainty of the facts averred, but "must explore readily available avenues of factual inquiry."  Parikh, 508 B.R. at 585 (quoting In re Obasi, 2011 WL 6336153, at *5 (Bankr. S.D.N.Y. Dec. 19, 2011)).

In a prior reported decision, I discussed Rule 9011(b)(3)'s requirement that an attorney make a reasonable inquiry as follows:

> In determining the reasonableness of the attorney's inquiry, the court should consider: the amount of time available to the signer for conducting the factual and legal investigation; the necessity for reliance on a client for the underlying factual information; the plausibility of the legal position advocated; whether the case was referred to the signer by another member of the Bar and the complexity of the legal and factual issues implicated.

Redante, 579 B.R. at 363 (citing Taylor, 655 F.3d at 284); see also In re Reither, 2018 WL 5310658, at *3 (Bankr. D. Mass. Oct. 25, 2018) (collecting cases).

Thus, an attorney's failure to reasonably investigate the evidentiary bases for his client's bankruptcy schedules is sanctionable under Rule 9011(b)(3).  In re Tabor, 583 B.R. 155, 185 (N.D. Ill. 2018).[27]  The court in Tabor observed:

> When a lawyer takes it upon herself to generalize answers for clients or fails to conduct the diligence necessary to provide accurate schedules, the reasonableness of that lawyer's inquiry in relation thereto is called into question.

583 B.R. at 186-87.  Other courts agree.[28]

----

[27]  The attorney in Tabor was sanctioned pursuant to 11 U.S.C. §105 for steering debtors into bankruptcy despite having no legitimate plan to help them save their homes from foreclosure (and in order to make quick and plentiful fees).  However, the court provided an analysis of Rule 9011(b)(3)'s "reasonable investigation" requirement in addition to the standards at 11 U.S.C. §105.

[28]  See In re Cuomo, 2013 WL 3155425, at *10 (Bankr. D. Nev. June 20, 2013), aff'd
(continued...)

-24-

**B. Thomas violated Rule 9011**

**1. Thomas' inquiry into the factual averments in the Debtor's schedules**

In the Order to Show Cause, I stated that "In the Present Case, the Debtor filed

bankruptcy schedules that were virtually identical to the schedules filed in the First Case, **it**

**appearing that the Debtor simply filed the same disclosures filed in the First Case**."

(Order to Show Cause at 2 (emphasis added)).  Upon careful review and pursuant to the

factual determinations stated above, I now find that appearance largely to be the reality.

The record shows that Thomas filed **essentially identical schedules** on the Debtor's

behalf in the First Case and the Present Case.

Evidence of Thomas having simply recycled the schedules from the Debtor's first

bankruptcy ranges from the trivial to the serious.  Superficial duplications in Schedules I

include the same typo ("Vanguard Realiy") in the First and Present cases and the listed one-

year duration of the Debtor's employment, despite a year having passed between the two (2)

filings.  (See Findings of Fact Nos. 64-65).  A more substantial (and erroneous) duplication

is the listing of the Debtor's interests in the exact same real properties on both Schedules

A/B in the First and Present Cases, even though the Debtor revealed ownership of six (6)

---

[28](...continued)
2014 WL 5358180 (9th Cir. B.A.P. Oct. 21, 2014) (sanctioning attorney for failure to review
debtor's previous bankruptcy petition — filed by another attorney — before completing her
schedules, and noting: "[t]o say the least, cross-checking the Second Petition with the Third
Petition was a reasonable step to ensure that all dischargeable debts were scheduled"); In re
Withrow, 405 B.R. 505, 512-13 (1st Cir. B.A.P. 2009) (". . . any attorney who files schedules and
statements on a debtor's behalf makes a certification regarding the representations contained
therein. . . .  [The debtor's attorney] had an affirmative duty to conduct a reasonable inquiry into
the facts set forth in the Debtor's schedules . . . before filing them."); In re Tran, 427 B.R. 805,
810 (Bankr. N.D. Ca. 2010) ("the primary duty of a debtor's counsel is to make sure the
schedules are accurate and complete").

additional properties following the filing of the First Schedule A/B.   (See Findings of Fact
Nos. 42-51).

Additional examples of the overwhelming similarity of the Debtor's schedules
include their reporting of:  the same value of the Debtor's interest in and value of personal
property (see Findings of Fact Nos. 49-50), the same secured creditor positions (see Findings
of Fact No. 52), the same unsecured creditor claims (see Findings of Fact Nos. 55-55), the
same pending contracts or unexpired leases (see Findings of Fact No. 59), and identical
income and expenses (see Findings of Fact Nos. 63, 66).

For these reasons, it is abundantly clear to this court that Thomas recycled the
Debtor's schedules from her First Case and filed them with minimal alteration in the Present
Case.

I also find that Thomas failed to ask the Debtor about the full scope of her changed
financial affairs prior to filing her schedules in the Present Case.  Although the Debtor
acknowledged providing Thomas with information about her income and expenses in the
Present Case, she testified that she "did not see the 2018 schedules" or review them in the
"32-day period between the filing of the [2018] bankruptcy and the filing of [the 2018
schedules]."  (Tr. at 34, 48).  I have credited the Debtor's testimony on this point, and
therefore conclude that Thomas did not consider or prepare updated financial information
from the Debtor in the Present Case regarding many of the factual averments contained in
the Debtor's schedules.[29]

---

[29]  An obvious example of this failure is the fact that each of the Debtor's three schedules
A/B report that she had $120.00 in cash, $1,100.00 in bank deposits, and $700.00 in stocks.  (See
(continued...)

A similar conclusion is warranted with respect to Thomas' inquiry—or lack thereof—into readily available information concerning the Debtor's present financial condition.  In particular, I find that whatever system Thomas used to attempt to update the schedules in the Present Case failed and is clearly inadequate.

Perhaps the most obvious example of Thomas' failure to investigate material information prior to filing schedules in the Present Case can be found by examining the deficiencies in Schedule D in the Present Case (the "Present Schedule D").

Careful comparison of the Present Schedule D and the claims docket in the First Case, in addition to common sense, reveals that Thomas did not review the claims docket in the First Case in advance of preparing the Debtor's Present Schedule D.  The Present Schedule D fails to list at least nine (9) secured creditors who filed proofs of claim in the First Case and lists at least eight (8) secured debts in amounts other than those claimed in the First Case.  See Finding of Fact No. 52.

The twenty-two (22) claims filed in the First Case—and ignored by Thomas in the Present Case—may not have been settled or agreed upon, but the content of the claims was certainly relevant in preparing the disclosure of the Debtor's financial position as required by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

The definition of "claim" in the Bankruptcy Code is broad and includes rights of payments that are "liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. §101(5)(A).

---

[29](...continued)
Finding of Fact No. 49).

-27-

Schedule D (Official Form 106D) calls for a debtor to "[b]e as complete and accurate as possible," [l]ist all secured claims," and allows for a debtor to qualify a claim as contingent, unliquidated, or disputed.  Explaining a debtor's duty to disclose creditors under  Federal Rule of Bankruptcy Procedure 1007, the leading bankruptcy treatise states that:

> [T]he list of creditors should be a list of *all* creditors . . . .  The debtor is not permitted to omit creditors from the list because the debtor does not want those creditors affected by the bankruptcy case or does not want them to know about the case or for any other reason.

4 Collier ¶ 521.03[1] (2019) (emphasis in original).

Schedule G in the Present Case (the "Present Schedule G") further evidences Thomas' lack of investigation in preparing the Debtor's bankruptcy.  Schedule G fails to account for any contracts or leases for which the Debtor is responsible. Thomas, who worked with the Debtor for more than two (2) years when he filed the Debtor's schedules in the Present Case, knew that the Debtor operates as a landlord in the City of Philadelphia and therefore, is a party to a number of real estate leases.  It is impossible that a basic inquiry would have yielded no relevant information.

At the hearing, Thomas acknowledged the overwhelming similarities between the original schedules filed in the Debtor's First Case and the schedules filed in her Present case.  (Tr. at 82-83, 89).  He also recognized the fact that the latter did not accurately reflect the information contained in the First Case's amended schedules or the Proofs of Claim. (Tr. at 64, 83-86).  Thomas explained these deficiencies by asserting that they were oversights, and stating "I just need to do better at making sure that everything is 100%

-28-

accurate."  (Tr. at 64, 83, 85-86, 89).[30]

In light of the overwhelming evidence that Thomas copied the Schedules from the from the First Case and re-filed them in the Present Case, I find his explanation completely incredible. Simply put, I do not believe Thomas' testimony that the similarity between the disclosures in the two (2) bankruptcy cases was the product of mere oversight; to the contrary, the only possible inference is that Thomas' actions were intentional.

### 2. Thomas' Inquiry was not Reasonable

I have concluded that Thomas filed essentially the same schedules in the Debtor's two (2) bankruptcy cases and did not adequately review the schedules in the First Case prior to completion of the current schedules. But is such failure sanctionable under Rule 9011(b)(3)? The answer to this question is yes because Thomas' inquiry prior to filing the schedules in the Present Case was not reasonable.

It is helpful to begin with a brief discussion of what a reasonable inquiry and investigation by Thomas would have looked like.

A lawyer filing a second bankruptcy case on behalf of a debtor whom he represented in a prior case should meet with the client to discuss the purpose of the bankruptcy, the debtor's assets, liabilities, and any pending litigation.  The attorney should carefully and extensively review not only all the client's financial information (including pay stubs and tax forms), but also examine the previous bankruptcy filings and schedules in order to have full and complete knowledge of a potential debtor's liabilities and creditors.

---

[30]  Thomas described a shared system of information gathering, with both he and his assistant collecting information from the Debtor and various other places.  (See Tr. at 59, 73, 83).

According to the leading bankruptcy treatise, an attorney preparing a debtor's schedules:

> . . . **should carefully investigate the affairs of the debtor** and make certain that the attorney has all the information needed to prepare full and complete schedules, for it is the duty of the debtor to present intelligible and true schedules. . . . **[T]he attorney for the debtor has a responsibility to review [the] schedules to ensure that they are complete and in compliance** with the Code and the Federal Rules of Bankruptcy Procedure. . . . Omitted creditors, without notice or actual knowledge of the case, may in certain circumstances be able to enforce their claims against the debtor as though he or she had not been discharged in bankruptcy.  The omission of significant assets may cause the loss of those assets, or give rise to objections to the granting of a discharge or perhaps lead to the revocation of a discharge already granted, as well as possible criminal charges.

4 Collier ¶ 521.03[3] (emphasis added) (footnotes omitted).

Here, Thomas' lack of investigation caused him to submit to the court schedules that were incomplete, inaccurate, and misleading.  The inquiry employed by Thomas into the Debtor's changed financial condition from the First Case  – if in fact, there was any inquiry at all  –  was not reasonable.  See In re Withrow, 405 B.R. 505, 513 (1st Cir. B.A.P. 2009) (finding that an attorney's alleged personal health issues and/or his client's faulty memory "are not sufficient to overcome [his] sloppy and careless actions (or inactions)" in preparing the debtor's documents for submission to the court).

Further analysis of the factors I identified in Redante further support the conclusion that Thomas violated Rule 9011.

- The issues here required attention to detail, but were not complex;

- Thomas' failing resulted either from extreme carelessness or an intentional disregard of his obligations, rather than a misunderstanding of how or why to proceed;

-30-

- The Debtor's case was not referred to Thomas.  He was the lawyer of record in the First Case;

- While there was some necessary reliance on the Debtor for underlying factual information, a large part of the relevant factual information was available to Thomas on records already in his possession and in the public domain (i.e., the bankruptcy court record in the First Case);

- There is no plausible explanation for the shocking incompleteness of the information provided to the court; and

- While Thomas was under some pressure to file the Present Case, he had sufficient time to file accurate schedules (thirty-two (32) days), particularly in light of the fact that he asked for and was granted an extension to do so.  (See infra Section III.C.

For these reasons, I find that Thomas violated Rule 9011(b)(3).


## C. Thomas' Arguments

Thomas' defense ultimately rests on his view that the shortcomings detailed above are, in colloquial terms, "no big deal."  Although Thomas acknowledged at the hearing that he "needs to do better," (Tr. at 89), the thrust of his post-hearing brief is that the inaccuracies in the Debtor's initial schedules in the Present Case are insubstantial and pale in comparison to the injustice the Debtor suffered by way of Brown's conduct in the State Court Action.[31]

---

[31]  It is notable, and troubling, that Thomas spends the majority of his Brief discussing what he perceives as errors and injustices regarding the State Court Action. In fact, Thomas attached 274 pages of pleadings, exhibits, transcripts, and depositions from the State Court. This extraneous information and argument are an indication that Thomas "just doesn't get it."  He fails to understand that this matter—determination of the Show Cause Order—is about his conduct in failing to review and analyze critical information prior to submitting documentation to the court.  The history and status of the State Court Action are mostly irrelevant to the present inquiry.

More specifically, Thomas makes three (3) arguments as to why his actions do not rise to the level of sanctionable behavior.

First, Thomas asserts that any errors or omissions in the Debtor's schedules were the result of oversight or simple (excusable) error. (See, e.g., Tr. at 83, 85; Thomas Brief at 2).[32] It is a fair point that if the identifiable errors and omissions in the Debtor's schedules amounted to a few mistakes or something easily overlooked, Thomas' conduct would not rise to the level of a Rule 9011 violation.  However, once an omission or misstatement may be deemed "culpably careless," an attorney's conduct amounts to sanctionable behavior.  In re Brent, 458 B.R. 444, 457-58 (Bankr. N.D. Ill. 2011) (observing that the test for culpable carelessness is an objective test of reasonableness).  Given the scope of the errors and omissions, I reject the explanation that they were the product of oversight or excusable error.

Second, Thomas asks the court to infer that his legal assistant (Melinda) failed to fulfill certain duties, resulting in the misstatements in the Debtor's schedules.  (See e.g., Tr. at 73, 83).  Thomas testified:

> Q. Okay And how do you respond to [the Debtor's] testimony that she didn't go over any of this with you in between the time the petition was filed and the filing of the schedules?
>
> A. I don't [sic] if she spoke with Melinda in regard to any updates, but I know that I spoke with Melinda in regards to those updates and I spoke with [the Debtor] on – regarding some changes that may be needed. **So between those two, I believe that's how the schedules are the way they are currently.**

(Tr. at 87) (emphasis added).

Even if Thomas is correct that his assistant dropped the ball, the misstep of one's staff

---

[32]  Thomas also said at times that he was unsure of or forgot what happened with regard to the preparation of the schedules. (See Tr. at 72-74, 82).

is neither an explanation nor an excuse for professional deficiencies.  An attorney may not

excuse errors in matters or pleadings for which he is responsible by throwing his staff under

the bus.  See e.g., In re Johnson, 35 B.R. 79, 81-82 (Bankr. D. Conn. 1983) (finding that a

mistake by clerical staff is not "excusable neglect"); see also In re Moffett, 2012 WL

693362, at *4 (Bankr. C.D. Ill. Mar. 2, 2012) (admonishing attorney that he is "responsible

for his own acts" and cannot rely on staff to do legal work for him).

   Further, I will draw a negative inference from the fact that Thomas did not make his

assistant Melinda available to testify at the Show Cause Hearing.  I am unwilling simply to

infer from Thomas' say-so that Melinda, who did not testify, is so incompetent that she is to

blame for the overwhelming omissions and inconsistencies in the Debtor's schedules.

   Third, Thomas points to the fact that this bankruptcy was filed "as an emergency" due

to the levy of rents on the Debtor's property, suggesting that there was just no time to ensure

that the filing was accurate.  (Thomas Brief at 5).  However, exigent circumstances do not

excuse failure to conduct a reasonable inquiry.  In re Parikh, 508 B.R. 572, 579 (Bankr.

E.D.N.Y. 2014); In re Dent, 275 B.R. 625, 628 (Bankr. M.D. Ala. 2002) (noting that

exigent circumstances do not excuse errors, particularly where attorney represented the

debtor in previous bankruptcy filing).  Even though the scope of the inquiry may be affected

by the existence of an emergency situation, a reasonable inquiry is still required prior to

making factual assertions on the Debtor's schedules. In re Schmelia, 607 B.R. 455, 461

(Bankr. D.N.J. 2019).

   In the end, however, Thomas' third argument is simply beside the point.  The issue in

this Rule 9011 inquiry does not involve Thomas' filing of the emergency bankruptcy

petition; **rather, the inquiry concerns the bankruptcy schedules he filed thirty-two (32)**

**days later**.  Thomas had plenty of time to conduct a reasonable investigation and submit

accurate schedules.

In sum, Thomas' arguments in defense of his conduct border on the frivolous.


### D. Sanction

Rule 9011(c)(2) allows a court, within its discretion, to sanction an attorney for

violations of 9011(b).[33]  Parikh, 508 B.R. at 584 (citing Perez v. Posse Comitatus, 373 F.3d

321, 325 (2d Cir. 2004)).  The purpose of a sanction is "to deter undesirable future conduct."

DiPaolo v. Moran, 407 F.3d 140, 146 (3d Cir. 2005).  The court has broad discretion to

determine an appropriate sanction. Langer v. Monarch Life Ins. Co., 966 F.2d 786, 811 (3d

Cir. 1992); see also In re Withrow, 405 B.R. 505, 514 (1st Cir. B.A.P. 2009) (citing In re

Thomson, 329 B.R. 359, 362 (Bankr. D. Mass. 2005)).   The sanction may be monetary and,

if monetary, may include a penalty of payment to the court. In re Freeman, 540 B.R. 129,

138 (Bankr. E.D. Pa. 2015); see also In re Tabor, 583 B.R. 155, 202 (Bankr. E.D. Ill. 2018)

(imposing sanctions of a refund to debtor of all fees, plus an additional $4,000.00 so that the

debtor could refile bankruptcy petition); Withrow, 405 B.R. at 514-15 (affirming sanction of

$3,585.00 payment to the chapter 13 trustee).

In considering a penalty, a court should award "the least severe sanction that is likely

---

[33]  Rule 9011(c)(2) provides that "[a] sanction imposed for violation of this rule shall be
limited to what is sufficient to deter repetition of such conduct or comparable conduct by others
similarly situated. . . . [T]he sanction may consist of, or include, directives of a nonmonetary
nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective
deterrence, an order directing payment to the movant of some or all of the reasonable attorneys'
fees and other expenses incurred as a direct result of the violation."

to deter this type of conduct . . . ."  In re Antonelli, 2012 WL 280722, at *13 (Bankr. D.N.J.

Jan. 30, 2012) (citation omitted); see also Republic of Philippines v. Westinghouse Elec.

Corp., 43 F.3d 65, 74 (3d Cir. 1994) (stating that a court must "ensure that the sanction is

tailored to address the harm identified").[34]

In applying the above standards, and considering the nature and extent of the violation

here, I will impose three (3) sanctions on Thomas.

First, Thomas will be denied the opportunity to file an administrative expense in the

Debtor's Present Case, which may have allowed him to be paid if the chapter 7 Trustee

raises an estate sufficient to result in a distribution to creditors.[35]  Thomas' misconduct is not

the result of mere oversight or even an ignorance of the law, but rather what must be

characterized as a conscious disregard of his most basic duties as an attorney for a

bankruptcy debtor and a partial abandonment of his duties as Debtor's counsel.  Therefore,

he should not receive any compensation in this case.

Second, Thomas will be ordered to pay $1,000.00 to the chapter 7 Trustee for the

benefit of the estate.  I impose this additional monetary sanction because Thomas' actions in

failing to review the Debtor's schedules prior to filing evidence a distinct lack of concern for

the integrity of the bankruptcy system, which depends on a complete and accurate self-

accounting of the Debtor's property and financial condition.  In order for Thomas to

appreciate the significance of the shortcomings in his professional conduct, I conclude that

---

[34]  A court may sanction both counsel and the party counsel represents.  In re Hill, 437
B.R. 503, 532 (Bankr. W.D. Pa. 2010).  In this case, there is no allegation of improper conduct
on the part of the Debtor.

[35]  Both the Debtor's testimony and Thomas' 2016(b) Disclosure of Compensation
indicate that Thomas has not yet received payment for his services in this matter.  Thus, the only
mechanism for Thomas to receive compensation is as a chapter 13 administrative expense.

depriving him of the right to compensation in this case is not sufficient. It is necessary for Thomas to feel some direct financial "sting" and I have chosen the lowest amount that I believe will have that effect.[36]

Third, I will refer this matter the Acting U.S. Trustee with a request that he consider, in the exercise of his professional and institutional judgment, initiating an appropriate proceeding in the district court seeking the temporary suspension of Thomas' authority to practice in the bankruptcy court or other relief on such terms as the district court deems appropriate.

I consider this third sanction appropriate for two (2) reasons.

While I have limited the scope of this Rule 9011 contested matter to a discreet issue (Thomas' failure to make a reasonable investigation before filing the Debtor's schedules), as this Opinion demonstrates, that failing was only one (1) of several ways in which Thomas' professional conduct and competence in representing the Debtor might reasonably be questioned. The Acting U.S. Trustee is institutionally well suited to expand the professional misconduct inquiry, if appropriate.

In addition, Thomas' failure to fully appreciate the inadequacy of his conduct raises a concern that there is an ongoing danger to the public and the profession if the only sanctions imposed were the financial ones described above. Again, the Acting U.S. Trustee is best

---

[36] I have considered, and rejected, the possibility of requiring Thomas to attend continuing legal education programs as a sanction in this case because I do not believe the shortfall in his conduct is remediable by legal education. Cf. Redante, 579 B.R. at 366 (requiring attorney to attend continuing legal education programs because his Rule 9011 violations stemmed from an ignorance of the law). Something more severe is necessary to impress upon Thomas the seriousness of his misconduct.

suited to determine and act if further remedies are necessary.[37]

I find that these three (3) sanctions, along with the publication of this Opinion, to be the least severe sanctions necessary to deter Thomas from repeating the misconduct described in this Opinion.

## IV.  CONCLUSION

For the reasons stated above, I find that Thomas violated Rule 9011(b)(3) by filing the Debtor's bankruptcy schedules with the court without reasonably inquiring whether the information in the schedules had evidentiary support or was likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.  Thomas will be sanctioned as stated in Part III.D. of this Opinion.  An appropriate order will be entered.

Date: February 13, 2020

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**

---

[37]  This court lacks the legal authority to suspend or terminate an attorney's admission to the bar of this court.  Only the district court may take such action.  See L.B.R. 2090-2(b).

In light of the fact that, if appropriate, a separate proceeding must be initiated in the district court, I find it preferable to refer the matter to the Acting U.S. Trustee, rather than to the district court for two (2) reasons.

First, in general, the district court's review will be enhanced if the process is adversarial rather than inquisitorial, i.e., if a district court action—if appropriate—is initiated by the Acting U.S. Trustee.

Second, the Acting U.S. Trustee is positioned to have a more global view of Thomas' conduct, including his performance in cases before other bankruptcy judges in this district.  I am satisfied that the integrity of the bankruptcy system will be protected by relying on the professional and institutional judgment of the Acting U.S. Trustee in the circumstances presented here.