**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Chapter 7 |
| | : | |
| Sharonn E Thomas, | : | |
| | : | No. 18-17430-ELF |
| Debtor. | : | |

**MOTION OF TRUSTEE, TERRY P. DERSHAW, ESQUIRE,**
**TO SELL CERTAIN REAL ESTATE ASSETS FREE AND CLEAR OF**
**LIENS AND ENCUMBRANCES SURCHARGE CERTAIN SECURED**
**CREDITORS AND RESOLVE CERTAIN DISPUTES**

Terry P. Dershaw, Esquire (the "Trustee"), Trustee of the bankruptcy estate ("Estate") of

Sharonn E Thomas ("Debtor"), by and through his attorneys, hereby moves this Court for the

entry of an Order under 11 U.S.C. § 363(b) and Rules 6004 and 9019 of the Federal Rules of

Bankruptcy Procedure, substantially in the form of the Order attached hereto, authorizing the

Trustee to sell certain real estate assets free and clear of all interests, liens and encumbrances

(collectively, the "Liens"), surcharging various interests, and approving the resolution of certain

disputes, as more fully described below.  In support of this Motion, the Trustee respectfully

represents as follows:

**Background**

1.      Movant is Terry P. Dershaw, Esquire, Trustee of the Estate of Debtor.

2.      A voluntary petition under chapter 7 of the United States Bankruptcy Code was

filed by the Debtor, and an Order for Relief was entered by this Court on November 8, 2018.

3.      Debtor scheduled ownership in certain real property improved by residential

houses generally known at the addresses as set forth as property numbers 1, 2, 3, 7, 8, 9, 10, 11.

12. 13. 15, 16, 19, 20, 21 and 26 in Exhibit A attached hereto.  Prior to the bankruptcy, the

Debtor was engaged in the residential rental business by maintaining an inventory of residential

rental houses including those that the Trustee seeks to sell as set forth in Exhibit A (the "Properties") which are property of the bankruptcy estate.

4.      By this Motion, the Trustee seeks authority (i) to liquidate certain Properties as soon as practical so as to maximize the value of the Properties, (ii) to resolve certain disputes concerning the proceeds of such sales, (iii) to surcharge any secured creditor that have not otherwise entered into an agreement with the Trustee, (iv) to authorize payment of certain liens and costs at closing, (v) to approve an agreement with the City of Philadelphia and (vi) to provide for a method of arranging an auction sale should higher and better offerors turn up.

5.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

6.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).

7.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**The Liquidation of the Properties**

8.      Trustee obtained court authority to employ a real estate agent and the Properties have been marketed and listed for sale resulting in agreements of sale for the prices set forth in Exhibit A.

9.      The Trustee has used the services of his real estate agent, financial advisers, and counsel to facilitate the sale of the Properties since they have substantial knowledge of the industry and experience in the sales of rental properties.

10.     The Trustee believes that by using the services of his professionals, the Properties are being sold for the highest and best value.

11.     The Trustee has entered into agreements of sale for a "cash sale" of the Properties, "as is, where is", subject to Bankruptcy Court approval ("Contracts") for each of the Properties to parties identified in the Contracts ("Purchasers") for the sale prices indicated on Exhibit A

(Sale Price"). True and correct copies of the Contracts will be  marked as Exhibit "B-1 through

B-16" filed of record, and incorporated herein by reference.

       12.      The Purchasers were procured through the efforts of the listing real estate  agent,

are not insiders of the Debtor, are *bona fide* purchasers, and have deposited earnest money as set

forth on Exhibit A.

       13.      The proposed sales are not in the ordinary course of business, as provided by 11

U.S.C. §363(b), and any lien to the extent valid, perfected, enforceable, and unavoidable will

attach to the proceeds of the sale as each such entity could be compelled in a legal or equitable

proceeding to accept money satisfaction of such interest. Therefore, the Trustee proposes to sell

the Properties free and clear of liens as provided by 11 U.S.C. §363(f)(5).

       14.      The Trustee believes the sale prices set out on Exhibit A represent an appropriate

selling price for each of the Properties and has been obtained quickly after obtaining the City's

cooperation thereby preventing any large per diem increase in the various payoffs and obviating

the need to spend legal fees in opposing any stay relief motions of first priority secured creditors.

It is therefore in the best interests of the estate to have this sale approved and consummated.

### To Be Paid At Closing

       15.      The Trustee further moves for authority to have paid at closing any unpaid real

estate taxes, the estate's pro rata share of transfer taxes, all closing costs and related

disbursements, the payoff due undisputed first or priority mortgage claims, all real estate

commissions, and reimbursement to the Listing Agent of the costs advanced at the request of the

Trustee to preserve the Properties and prepare for closing, and other similar expenses as these

expenses were incurred at the request of the Trustee to enable the Properties to be shown and

marketed to its best advantage.

16.    In proposing the sales of these Properties, the trustee has considered whether sufficient funds will be generated to make a meaningful distribution to unsecured creditors.  As set forth on Exhibit A, the sale of each of the Properties, when considered along with the administration of other assets in this case, will result in a meaningful distribution to unsecured creditors. Out of the total sales of slightly more than one million dollars, approximately $200,000 goes to pay off mortgages, approximately $100,000 is estimated for expenses of sale, around $300,000 will go to reimburse the City of Philadelphia for years of unpaid water, trash and other such claims, around $130,000 is reserved for estate taxes and leaving the total estimated proceeds for the estate exceeding $130,000.   While the administrative costs will be high due to the complex nature of this case, the unsecured claims filed in this case total only around $12,000.

17.    As set forth in Exhibit A, various creditors hold security interests in and to the Properties.  The information on security interest was derived from the Debtor's SCHEDULES, investigation, and title reports (Exhibit C).

18.    As set forth in Exhibit A, certain Liens are undisputed by the Trustee (the "Undisputed Liens") in the amount set forth on Exhibit A and will therefore be paid at closing, or an agreement is in place with respect to treatment of such Undisputed Liens.

19.    To the extent that a secured creditor has a valid lien on the Properties, to the extent that the lien is not paid at closing, it shall have a valid lien on the proceeds received by the Trustee from the sale of the Properties.  Accordingly, and pursuant to 11 U.S.C. § 363(f)(2) and (3), the sale of the Properties should be free and clear of all liens, claims and encumbrances.

20.    Besides the usual tax and utility liens, the City of Philadelphia ("City") asserts priority judgment liens that attaches to the Properties.  The Trustee has an agreement with the City (the "carve-out") in connection with the treatment of such priority judgment liens (described below).  The trustee justifies these sales through a negotiated carve-out agreement with the

secured creditor. A carve-out agreement is generally understood to be "an agreement by a party secured by all or some of the assets of the estate to allow some portion of its lien proceeds to be paid to others, i.e., to carve out its lien position." *Costa v. Robotic Vision Sys., Inc. (In re Robotic Vision Sys., Inc.)*, 367 B.R. 232, 237 n. 23 (1st Cir. BAP 2007); .*In re KVN Corp.*, 514 B.R. 1 (B.A.P. 9th Cir. 2014).

21.    As reflected in Exhibit A, the debtor is a co-owner with respect to certain Properties. The trustee intends to sell both the estate's interest, under subsection (b) or (c) of section 363 of the Bankruptcy Code and the interest of any co-owner in the Properties because:

(1) partition in kind of such property among the estate and such co-owners is

impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less

for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners

outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission or distribution, for sale, of

electric energy or of natural or synthetic gas for heat, light or power.

22.    The portion of the sales proceeds to be paid to the co-owner for each sale are set out in Exhibit A.  The co-owners may be surcharged for their share of expenses of administration of these properties.  Although the surcharges would exceed the proposed distribution to each co-owner, the Trustee is willing to standby the proposals set forth in Exhibit A in order to resolve these issues without litigation. The Trustee, however, reserves the right to seek a surcharge in the event any co-owner objects to the sale or in the event a complaint must be filed and prosecuted.

23.     Partition in kind of the real property between the bankruptcy estate and the co-owners of the Properties is impracticable.  A sale of the bankruptcy estate's interest in the co-

owned Properties would realize significantly less for the estate than the sale of such property free of the interests of a co-owner.

24.    If the Properties are sold, the trustee would be required to pay the co-owners their share of the proceeds of the Properties as set forth on Exhibit A.  Because the proceeds would be split between co-owners and the trustee, the benefit to the estate would outweigh any alleged detriment to the co-owners.  Since the trustee is willing to pay the co-owners their proportional share in the net price and the co-owners are free to bid for and  purchase the bankruptcy estate's interest in the co-owned properties, the interests of all co-owners are adequately protected.

### The Carve-outs

25.    The City and the Trustee have agreed to a "carve-out" for the Estate of the net sale proceeds that would otherwise be paid to the City in partial satisfaction of its priority judgment lien position in each of these Properties.

26.    Even though the City asserts a priority judgment lien on the Properties, it has agreed to:

(i)    release its judgment lien on each of the Properties to enable the sale to be closed in exchange for payment at closing of sixty percent (60%) of the net proceeds of the sale raised by the sale of the Properties to be applied to the City's judgment lien until it is satisfied;

(ii)    forty percent (40%) of the net proceeds shall be contributed to the Trustee as property of the Estate;

(iii)    for purpose of the carve-out, "net proceeds" shall mean the sum after payment of:

(1) closing costs,

(2) City's statutory liens like real estate taxes,

(3) broker fees,

(4) Estate taxes resulting from the sale, and

(5) higher priority mortgages.

27.    The City shall receive payment of its 60 percent portion of the net proceeds at the closing of each of the Properties.

**Disputed Liens**

28.    The Title Report (Exhibit C) identifies additional judgment liens.

29.    After investigation, the Trustee believes that these remaining liens are invalid, extinguished, void or voidable, subject to subordination, sufficiently junior to be out of the money, or otherwise disputed ("Disputed Liens").  Various judgment liens have expired due to failure of the lien holder to timely revive the lien.   The Disputed Liens are subject to *bona fide* dispute within the meaning of Section 363(f)(4) of the Bankruptcy Code.

30.    The Trustee investigated title reports and has noted no other alleged liens, claims or interests in the Real Property. Any other such liens, if any, are disputed pursuant to Section 363(f)(4) of the Bankruptcy Code.

31.    To the extent that a secured creditor has a valid lien on the Properties, that lien is in the money, and further to the extent that the lien is not paid at closing, such creditor shall have a valid lien on the proceeds received by the Trustee from the sale of the Properties.  Accordingly, and pursuant to 11 U.S.C. § 363(f)(2) and (3), the sale of the Properties should be free and clear of all liens, claims and encumbrances.

**Surcharges of Secured Creditors' Interest**

32.    To the extent any party holds a valid security interest in or claim to the Properties, other than the City of Philadelphia, the Trustee seeks authority pursuant to §506(c) to pay out of any recovery from any sale, the reasonable, necessary costs and expenses of preserving, or disposing of the Properties.

33.     Under § 506(c), a trustee may recover from property securing an allowed secured claim the "reasonable, necessary costs and expenses of preserving or disposing of, such property to the extent of any benefit to the holder of such claim …." 11 U.S.C. § 506(c); *In re Visual Ind., Inc.*, 57 F.3d 321, 325 (3d Cir. 1995); *In re C.S. Assocs.*, 29 F.3d 903, 906 (3d Cir. 1994).  The premise underlying § 506(c) is that the unsecured creditors should not be required to bear the full costs of administering a secured creditor's collateral.

34.     Section 506(c) of the Bankruptcy Code provides an exception to the general rule that the payment of expenses associated with administering a bankruptcy estate, including the administration of assets pledged as collateral, must derive from unencumbered assets. Under section 506(c), a trustee "may recover from property securing an allowed claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." The purpose of the provision is to prevent secured creditors from obtaining a financial windfall at the expense of the estate and unsecured creditors by ensuring that the secured creditors are responsible for the same collateral disposition costs within a bankruptcy case that normally would arise in a foreclosure or similar state law proceeding outside bankruptcy. See *Loudoun Leasing Development Co. v. Ford Motor Credit Co. (In re K & L Lakeland, Inc.)*, 128 F.3d 203 (4th Cir. 1997); *In re TIC Memphis RI 13, LLC*, 498 B.R. 831 (Bankr. W.D. Tenn. 2013).

35.     The Trustee has determined that the total surcharge amounts to a value equivalent to 10 percent of the sale price.

36.     The Trustee has determined that if any such surcharge is necessary, the Trustee seeks to surcharge such party up to ten percent (10%) of any secured creditors' proceeds derived from the sale price except for the City.

**Upset Bid Procedure/Auction**

37.     Any party interested in purchasing any of the Properties for a higher or better price (an "Upset Bidder") should file a notice of an upset bid with the Bankruptcy Court and serve same on the United States Trustee and Chapter 7 Trustee on or before 5:00 p.m. on December 3, 2021 (the "Bid Procedures").

38.     The Upset Bidder shall submit to the Trustee an offer, in writing, in an amount equal to the Alternative Minimum Bid (defined below), and submit information demonstrating the financial wherewithal of the Upset Bidder to consummate the proposed transaction.

39.     An Alternative Minimum Bid shall be an amount no less than Five Thousand Dollars ($5,000.00) more than the existing Sale Price.

40.     Upset Bidders may not substantially deviate from the terms of the Contracts attached hereto as Exhibit B. The Trustee, in the Trustee's discretion, will determine if the Upset Bidder has submitted a qualified bid based on the terms of the bid, and review of proof of the Upset Bidder's financial ability to consummate the proposed purchase at the Alternative Minimum Bid price.

41.     If a qualified Alternative Minimum Bid is timely received by the Trustee, then the Trustee shall conduct a private auction starting at 11:00 a.m. on December 13, 2021 by Zoom Conference Meeting (telephone or streaming audio-video).  Only those who have submitted a qualified Alternative Minimum Bid, as determined by the Trustee, and their professionals may attend the auction.  The Trustee will select the bid, or combination of bids, at the conclusion of the auction that the Trustee believes to be the highest or best value for the Properties (the "Winning Bidder"). The Trustee reserves the right to select the best bid, even if not the highest bid.

9

42.     The Winning Bidder and any bidder participating in the process must complete and sign all agreements or other documents with the Trustee evidencing and containing the terms and conditions on which the winning or any other bid was made before the auction is concluded.

43.     In the event the Winning Bidder is different from the Buyer identified in this Motion to Sell, the Trustee shall ascertain whether the Winning Bidder is an insider of the Debtor, whether the sale represents an arms-length transaction between the parties, made without fraud or collusion, and whether there has been any attempt by either party to take any unfair advantage of the other such that the Winning Bidder may be deem to be purchasing the Properties in good faith pursuant to 11 U.S.C. § 363(m).

44.     If for any reason the Winning Bidder fails to consummate the sale of the Properties, the offeror of the second highest or best bid (subject to the same reservations) will automatically be deemed to have submitted the highest and best bid, and the Trustee is authorized to affect the sale of the Properties or any one of them to such offeror without further order from the bankruptcy court. If such failure to consummate the purchase of the Properties is the fault of the Winning Bidder, the Winning Bidder's deposit, if any, shall be forfeited to the Trustee.

45.     The Trustee reserves the right to: (1) impose, at or before the Auction, additional terms and conditions on a sale of the Properties; (2) extend the deadlines from those set forth herein, adjourn the auction at the auction; (3) withdraw the Properties, or any part of the Properties, from sale at any time before or during the auction, and to make subsequent attempts to market the same; and (4) reject all bids if, in the Trustee's reasonable judgment, no bid is for a fair and adequate price.

**The Requested Relief**

46.     For the reasons set forth herein, the Trustee respectfully requests that the Court

issue an Order pursuant to 11 U.S.C. §105 and 363(b) and (f) authorizing the Trustee to sell the

Properties contemplated by the Contracts, free and clear of liens and claims.

47.     Ample authority exists for the entry of an Order (i) authorizing the liquidation of

the Properties free and clear of the Liens, with such Liens to attached to the proceeds of the sale,

and (ii) approving the resolution of the disputes as agreed by the parties.

48.     Section 363 of Bankruptcy Code, which authorizes a sale of assets of the estate in

a manner other than in the ordinary course of business, free and clear of liens, claims and

encumbrances, provides, in relevant part, as follows:

> (b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other
> than in the ordinary course of business, property of the estate.
> ..........
> (f) The trustee may sell property under subsection (b) or (c) of this section
> free and clear of any interest in such property of an entity other than the
> estate, only if --
>
> (1) applicable non-bankruptcy law permits sale of such property free and
> clear of such interest;
>
> (2) such entity consents;
>          . . . .
> (5) such entity could be compelled, in a legal or equitable
> proceeding to accept a money satisfaction of such interest.

11 U.S.C. §§ 363(b)(1), (f).   Further, Bankruptcy Rule 6004(f)(1) specifically states that "[a]ll

sales not in the ordinary course of business may be by private sale . . ."   See Fed. R. Bankr. P.

6004(f)(1).

49.  Although Bankruptcy Code section 363 does not set forth a standard for determining

when it is appropriate for a court to authorize the private sale of a debtor's assets, courts in the

Third Circuit and elsewhere, in applying this section, have required that (i) a sound business

reason exists justifying the sale, (ii) the sale price is fair and reasonable, (iii) the purchaser is

proceeding in good faith, and (iv) interested parties receive adequate notice of the sale. *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Indus. Valley Refrigeration and Air Conditioning Supplies*, 77 B.R. 15 (Bankr. E.D. Pa. 1987); *In re Stroud Ford, Inc.*, 163 B.R. 730 (Bankr. M.D. Pa. 1993).

50.     Based on the facts described above, the prompt liquidation of the Perishables is undeniably an exercise of sound business judgment, as one of the Trustee's objectives is to maximize the value of the assets for the creditors of the Estate.

51.     After the closings have taken place, a complete accounting of the sales will be obtained from the Broker and/or title clerk and the Trustee's Report of Sale will be filed with the court.

WHEREFORE, the Trustee respectfully requests the entry of an Order in the form attached hereto and granting such other and further relief as is just and equitable.

Date: November 12, 2021

GELLERT SCALI BUSENKELL & BROWN, LLC

/s/ Gary F. Seitz
Gary F. Seitz
8 Penn Center
1628 John F. Kennedy Blvd., Suite 1901
Philadelphia, PA 19103
Phone: (215) 238-0012
Fax: (215) 238-0016
Email: gseitz@gsbblaw.com
Counsel to Terry P. Dershaw,
Chapter 7 Trustee