```
                     UNITED STATES BANKRUPTCY COURT
                     EASTERN DISTRICT OF PENNSYLVANIA


 IN RE:                              )   Case No. 18-17430-ELF
                                     )
 SHARONN E. THOMAS,                   )
                                     )   Philadelphia, PA
                                     )   September 4, 2019
           Debtor.                   )   10:25 a.m.
                                     )
 ---------------------------------)      Chapter 7



              TRANSCRIPT OF CHAPTER 7 MOTION HEARING
                BEFORE THE HONORABLE ERIC L. FRANK
                   UNITED STATES BANKRUPTCY JUDGE


 APPEARANCES:

 For the Debtor            DAMIEN N. TANCREDI, ESQUIRE
 Sharonn E. Thomas:        FLASTER GREENBERG, PC
                           1835 Market Street
                           Suite 1050
                           Philadelphia, PA  19103




 Audio Operator:           CHRISTOPHER CARUSO




 Transcribed by:           DIANA DOMAN TRANSCRIBING, LLC
                           P.O. Box 129
                           Gibbsboro, New Jersey  08026
                           Office:  (856) 435-7172
                           Fax:     (856) 435-7124
                           Email:   dianadoman@comcast.net



 Proceedings recorded by electronic sound recording, transcript
 produced by transcription service.
```

2

<u>I N D E X</u>

<u>ARGUMENT</u>:                                                    <u>PAGE</u>

Re: Objection to Debtor's Homestead Exemption

  By Mr. Tancredi                                              3


<u>OFFER OF PROOF</u>:                                              <u>PAGE</u>

  By Mr. Tancredi                                              5


<u>RULING BY THE COURT</u>:                                         <u>PAGE</u>

  By Judge Frank                                               7


<u>COLLOQUY</u>:                                                    <u>PAGE</u>

Re:  Status of case administration

  By Mr. Tancredi                                              7

| | |
|---|---|
| 1 | (Court in session at 10:25 a.m.) |
| 2 | THE CLERK: All right, Number 1, Sharonn Thomas. |
| 3 | MR. TANCREDI: Good morning, Your Honor. |
| 4 | THE COURT: Good morning. |
| 5 | MR. TANCREDI: Damien Tancredi of Flaster Greenberg |
| 6 | on behalf of the Debtor Sharonn Thomas. I was prepared to |
| 7 | present Ms. Thomas and explain to the Court how Ms. Thomas |
| 8 | resides in the Graypebble Circle address in New Jersey. I |
| 9 | would ask the Court to deny this motion for lack of prosecution |
| 10 | though. |
| 11 | THE COURT: No, I don't think I'll do that, but I |
| 12 | what I will do is since there's no one here, I'll accept an |
| 13 | offer of proof. But before we even do that, I guess what I'm |
| 14 | wondering is that I see the case has quite a long history, and |
| 15 | Mr. Clayton has been a regular participant. Have you had any |
| 16 | discussions with him? |
| 17 | MR. TANCREDI: I did, Your Honor. |
| 18 | THE COURT: And any particular reason why you think |
| 19 | he's not here? |
| 20 | MR. TANCREDI: Your Honor, I -- I did have |
| 21 | discussions with Mr. Clayton and I told him our position on the |
| 22 | exemptions motion. Without getting into the substance, we've |
| 23 | started to bridge towards potentially trying to resolve the |
| 24 | major creditor in this case being Mr. Clayton's client, and his |
| 25 | stance to me was well, let's see what happens with the motion. |

1 | I asked him to withdraw it.
2 | He said no, and he said let's see where it goes.  I
3 | do recognize that it was re-listed from yesterday to today, but
4 | Mr. Clayton filed an amended notice and I -- I do know in Mr.
5 | Clayton's motion he states, "If I can't come to Court, I still
6 | think you should grant the motion."  And --
7 | THE COURT:  Oh, is that right?  That --
8 | MR. TANCREDI:  There's a --
9 | THE COURT:  -- that I missed.  That's in there?
10 | MR. TANCREDI:  There's a footnote.
11 | THE COURT:  Wow.
12 | MR. TANCREDI:  And this is an exemptions motion, Your
13 | Honor.  This isn't something you can see and know, and we don't
14 | even -- we filed a reply, but a reply's not necessary under
15 | this Court's rules, we're entitled to a hearing.  I --
16 | THE COURT:  Well, let me give you the choice.  We can
17 | do this one of two ways.  We can go forward, you'll give me an
18 | offer of proof with some which -- the facts of which I strongly
19 | suspect will support your position, in which case I can rule
20 | and presumably in your favor.  The alternative is to reach out
21 | to find out when Mr. Clayton's here and avoid the potential for
22 | a motion for reconsideration based on some understandable
23 | circumstance as to why he's not here.  Your -- your call, I'll
24 | do it either way.
25 | MR. TANCREDI:  I would take door number one, Your

1   Honor, and submit an offer of proof --
2             THE COURT:  That's fine.
3             MR. TANCREDI:  -- and if Mr. Clayton wants to file a
4   motion for reconsideration, that's incumbent upon the Court if
5   they'd like to grant it or not.
6             THE COURT:  Okay, that's fine.
7             MR. TANCREDI:  Your Honor, should I call Ms. Thomas?
8             THE COURT:  No, that's fine --
9             MR. TANCREDI:  The standard -- may proceed by
10  proffer.
11            THE COURT:  -- she's here, she's been under oath
12  before, I'll -- there's nobody here so I'll accept an offer of
13  proof.  What would she -- tell me what she would testify to.
14            MR. TANCREDI:  Your Honor, Ms. Thomas would testify
15  consistent with her certification and opposition that was filed
16  on the Docket at Number 165-1, Ms. Thomas would testify that on
17  the petition date, her permanent residence was 49 Graypebble
18  Circle, Sicklerville, New Jersey, 0808 -- 08081.  Ms. Thomas
19  would testify that she purchased that property which I'll refer
20  to as "the New Jersey property" --
21            THE COURT:  Mm-hmm.
22            MR. TANCREDI:  -- in 1998, and has resided there ever
23  since.  Ms. Thomas would testify that she holds the New Jersey
24  property out as her permanent home.  On the -- Ms. Thomas would
25  testify that on the petition date, Ms. Thomas considered the

1  New Jersey property her permanent home.  She would also testify
2  that she holds a driver's -- a valid driver's license in New
3  Jersey with the address stated as the New Jersey property on
4  the face of the driver's license.
5          Ms. Thomas would testify that her personal banking
6  accounts identified the New Jersey property as her residence --
7  as the account address.  Ms. Thomas would testify that her
8  federal tax returns for the years 1999 through 2018 identify
9  the New Jersey property as her address.  Ms. Thomas would
10 testify that she has filed a New Jersey resident tax return
11 each year since 1999, all of which have alleged the New Jersey
12 property as her address.
13         Ms. Thomas -- Ms. Thomas would testify that she files
14 non-resident tax -- or she files Pennsylvania income tax
15 returns and indicates that she's not a resident in the
16 Commonwealth of Pennsylvania.  Ms. Thomas would testify that
17 she intends to remain in the home and use it as her personal
18 property -- as her primary residence.
19         Ms. Thomas would further testify that temporarily the
20 home is being repaired and she intends, once the home is
21 repaired, to reside there again permanently.  For those
22 reasons, Your Honor, I would ask that this Court make a finding
23 that the Homestead Exemption is valid and deny the movant's
24 objection.
25         THE COURT:  All right, with that as the record, I

1   will overrule the objection to the exemptions, and on actually
2   a second reason, perhaps we were gilding the lily here, to some
3   extent I could have ruled -- could have ruled in your favor by
4   the mere absence of the movant or the objector.  The burden of
5   proof is on the objector --
6              MR. TANCREDI:  It absolutely is, Your Honor.
7              THE COURT:  -- under Rule 4003(c).  You know, there
8   is a point of view held by a very respected Bankruptcy Judge,
9   Barry Russell -- he's written this Bankruptcy Evidence Manual,
10  there's lots of -- certainly lots of Bankruptcy Judges use, he
11  thinks the Rules Committee got it backwards, that the burden of
12  proof on an objection exemption should be on the Debtor
13  claiming the exemptions.
14             But he's never prevailed on that and the Rules
15  Committee has never modified Rule 4003, so I'll apply the
16  rules, the burden is on -- on the movants.  That's an
17  alternative reason why I will rule in the Debtor's favor on
18  this.  That said, and since you're here, can you just tell me
19  generally from the Debtor's perspective what's happening in
20  case administration?
21             MR. TANCREDI:  Yes, Your Honor.
22             THE COURT:  How are things going with you and the
23  Trustee basically?
24             MR. TANCREDI:  We have started and concluded -- we
25  have concluded the 341 meeting.  The Trustee has retained Mr.

1   Peter Meltzer who is to serve as Special Counsel to the Estate
2   in pursuing a malpractice action against Mr. Joshua Thomas.  We
3   are optimistic that the malpractice action will bring
4   sufficient assets into the Estate that would allow us to either
5   pay the claim of Brown & Thomas in full, or to effectuate a
6   settlement.
7                We have not ruled out the possibility -- and I guess
8   this is a good time to preview this -- of potentially
9   requesting that Your Honor reconsider your previous ruling that
10  the retro -- the automatic stay is permitted to be
11  retroactively annulled.  It is clear from the facts of this
12  case that the malpractice of Mr. Thomas prevented Ms. Thomas --
13  no relation -- from having her day in Court in front of the New
14  Jersey Arbitration Panel.
15               Ms. Thomas had valid counter-claims that were
16  extinguished as a result of her being unaware of the proceeding
17  and Mr. Thomas failing to appear, and we are confident that if
18  this case were to have proceeded to a New Jersey Arbitration,
19  it might have obviated the need for bankruptcy at all because
20  we believe that there would have been a judgment in favor of
21  Ms. Thomas and against Brown & Thomas on the counter-claims.
22               THE COURT:  It's a hard road to go.
23               MR. TANCREDI:  I --
24               THE COURT:  I can't say it's an impossible road, but
25  it's not an easy path.

Colloquy    9

1    MR. TANCREDI: Your Honor, and I recognize the
2  uphill --
3    THE COURT: Rule 60(b) in circumstances like this
4  would be tough.
5    MR. TANCREDI: Your Honor, and I recognize the uphill
6  battle and I -- and I also recognize the sensitivity in attempt
7  at collaterally estopping -- collaterally attacking your
8  decision, especially under the circumstances but --
9    THE COURT: It wouldn't be collaterally attacking if
10  you're asking me to --
11    MR. TANCREDI: Yeah --
12    THE COURT: -- to undo my own order.
13    MR. TANCREDI: -- I guess it's not a collateral
14  attack.
15    THE COURT: It's not a collateral attack. If you
16  went to somebody else to undo my order, that's a collateral
17  attack.
18    MR. TANCREDI: And that's one of the reasons, Your
19  Honor, why we decided to keep this case in Philadelphia and not
20  move it to Camden. And I understand it's -- it's a tough road
21  to hoe, but also if there's ever been a sympathetic set of
22  circumstances, this may be it.
23    THE COURT: At this point, does the Trustee or the
24  Debtor know the extent of Mr. Thomas's insurance?
25    MR. TANCREDI: We are in the process of obtaining

1  that information.
2        THE COURT:  That might be --
3        MR. TANCREDI:  That --
4        THE COURT:  -- a significant factor in determining
5  strategy for everybody, don't you think?
6        MR. TANCREDI:  It's a game-changer --
7        THE COURT:  Yeah.
8        MR. TANCREDI:  -- because we believe that an
9  insurance company may look at this and roll over and say yeah,
10 what -- what is it going to cost us.
11       THE COURT:  It just depends how much is there though.
12       MR. TANCREDI:  If -- I -- he's -- he's licensed in
13 the Commonwealth and I understand there's mandatory insurance
14 limits.  I am not going to profess myself as an expert on
15 malpractice insurance policies, but I know every time I fill
16 out my -- my statement, I have to verify that I have proper
17 insurance.
18       THE COURT:  I guess the other factor from my
19 perspective -- I'll say I know less than the parties about
20 everything, but what has to do with Mr. Clayton's client, the
21 extent to which his client is willing to deal --
22       MR. TANCREDI:  He expressed --
23       THE COURT:  -- in the interest of avoiding
24 litigation.
25       MR. TANCREDI:  He expressed an appetite for that and,

1  I mean, Mr. Clayton's client is going to have some skin in the
2  game soon given the fact that we intend to serve a Rule 2004
3  examination on him and it's going to become an issue where we
4  think this case should be resolved.  I mean, what we also state
5  is that Ms. Thomas still owns an interest in Brown & Thomas,
6  LLC which is now property of the Debtor's Estate and that needs
7  to be valued.
8          THE COURT:  Mm-hmm, all right, I understand.  That's
9  a lot of -- a number of different chess pieces on the board
10 here.
11         MR. TANCREDI:  This is a complex case.
12         THE COURT:  Yeah.  I don't know if I mentioned this
13 the last time everybody was in Court, but at least if there's a
14 consensus that mediation would be helpful, you should let me
15 know.
16         MR. TANCREDI:  Certainly, Your Honor, and I've --
17 we've successfully --
18         THE COURT:  I don't -- I tend not to compel it.
19         MR. TANCREDI:  -- we've successfully mediated cases I
20 think before Your Honor with Judge Chan before and it worked
21 out very well and we may ask, if we can get to a point where
22 we're not a thousand miles away, we may ask the Court to try to
23 -- to bridge that --
24         THE COURT:  Okay.
25         MR. TANCREDI:  -- to bridge a smaller gap.

1      THE COURT: All right. All right, well thank you for
2 the update. I'll enter an order overruling the objection to
3 the Debtor's exemptions and we'll see where it goes from here.
4      MR. TANCREDI: Thank you, Your Honor.
5      THE COURT: Thank you. Good luck.
6      MR. TANCREDI: Thank you.
7      (Proceeding concluded at 10:36 a.m.)
8                          * * *

**C E R T I F I C A T I O N**

I, Diane Gallagher, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

   /s/Diane Gallagher              04/27/22
DIANE GALLAGHER                    DATE
DIANA DOMAN TRANSCRIBING